R. Landis WILKINSON et al.,
Plaintiffs-Appellees,

v.

MANPOWER, INC. et al., Defendants,

Manpower Franchises, Inc.,
Defendant-Appellant.

MANPOWER FRANCHISES, INC.,
Plaintiff-Appellant,

v.

R. Landis WILKINSON et al.,
Defendants-Appellees.

No. 74–3580.

United States Court of Appeals,
Fifth Circuit.

May 13, 1976.

John I. Van Voris, Francis H. Cobb, Tampa, Fla., for appellant.

David A. Maney, Albert I. Gordon, Tampa, Fla., Leonard W. Cooperman, St. Petersburg, Fla., for appellees.

Before TUTTLE and GEE, Circuit Judges, and RUBIN, District Judge.

TUTTLE, Circuit Judge:

This is an interlocutory appeal by Manpower Franchises, Inc., from denial by the District Court of its motion for a preliminary injunction to restrain a former Manpower franchisee, R. Landis Wilkinson, Helen M. Wilkinson, and Landis Wilkinson's Temporary Services, Inc. (hereinafter collectively referred to as Wilkinson), from competing with Manpower in the temporary help service business in six Florida counties. The facts, which are not disputed, are that in June, 1954, Manpower Franchises, Inc., entered into a license agreement with the Wilkinsons pursuant to which the Wilkinsons were exclusively licensed to operate a Manpower temporary help service business within the Florida counties of Pinellas, Hillsborough, Polk, Pasco, Manatee and Sarasota. Subsequently, by renewal agreements dated January 24, 1964, and May 26, 1969, the license agreement was renewed for a period ending on June 16, 1979, subject to certain prior termination provisions. Pursuant to the license agreement Wilkinson conducted a temporary help business within these counties in the name of Manpower Incorporated of Hillsborough County from 1959 to March 31, 1974. Under the terms of paragraph 5(b) of the license agreement, franchise fees were to be paid to Manpower by Wilkinson as follows:

"b. Effective the fifth week after you have opened your office, in consideration of the benefits derived from us by you in operating a Manpower office, you will pay to us a weekly service charge to cover the cost of billing, sales campaigns, sales promotions, visit to your branch, maintenance of purchasing, advertising and public relations departments and to help defray the cost of national advertising. Said service charge will be paid weekly, based upon your weekly combined sales (billings) as provided for in paragraph 4–j for both the clerical division and the men's division, if any, (not including, however, weekly sales under your Salespower franchise), in accordance with the rates set forth below. Said rates will be computed on sales during a twelve (12) months period, which twelve (12) months period shall run from date of opening of your office.

RATES

On all annual sales up to $250,000, the service charge will be 6%.

On all annual sales over $250,000, up to $375,000, the service charge will be 5½%.

On all annual sales in excess of $375,-000, the service charge will be 5%."

More than one year prior to the filing of the complaint Wilkinson stopped paying franchise fees to Manpower as required by the license agreement. As a result, Manpower notified Wilkinson by letter dated March 15, 1974, that he had ten (10) days to pay his delinquent franchise fees or face termination of the license agreement pursuant to paragraph 6:

". . . we shall have the option to terminate this contract at any time in the event that you fail to abide by any of the terms of this agreement or upon your failure to pay the fees required by this contract. In the event that you are in default in the payment of the fees provided for in this contract or in the event that you violate any of the terms of this contract, we will notify you in writing of such alleged violation and you will have a period of ten days to correct said violation. In the event that such corrections

are not made within said ten day period, we shall have the right to cancel this contract forthwith and thereafter your license shall be of no further force and effect." .

Wilkinson ignored this demand and Manpower therefore terminated this license agreement by letter dated March 30, 1974.

As a result of the termination, the following provisions of the license agreement became operative:

"7. As long as you are a licensee, and *for a period of two (2) years after the termination of this contract for any reason, you agree that you will not be associated directly or indirectly as employee, proprietor, stockholder, partner, agent or officer with the operation of any business competitive to Manpower, Inc., or its affiliated companies.* This shall include the operation of any type of business offering the services defined in paragraph 4–j(J). *This restriction applies to operations (a) within the licensed area, or (b) in any city in which Manpower, Inc., its affiliated companies, or Franchises of Manpower, Inc., operate. The two foregoing restrictions, (a) and (b) are distinct and severable. In view of the confidential nature of our business you consent to the issuance of an injunction enjoining you from the operation of competitive business in violation of the terms of this agreement.* You also agree that we shall have the right to recover profits earned by you for a period of two (2) years in violation of this contract. You will not divulge or use during the terms that you are a licensee and for a period of two (2) years after the termination of this franchise, any data, customer or employee names and addresses, techniques, methods, advertising materials, forms, or other information of whatever kind used in connection with the Manpower, Inc. office in the licensed area without our consent." (Emphasis added.)

The license agreement also contained provisions prohibiting the continued use of Manpower trademarks, logos and programs following termination and requiring the licensee to turn over customer lists to Manpower upon termination.

Prior to the initial hearings on its motion for preliminary injunction Manpower filed affidavits establishing that following Wilkinson's termination, Manpower opened several temporary help branch offices in Pinellas and Hillsborough Counties and that Wilkinson was actively competing with these offices and, in fact, was continuing to use the Manpower name, trademarks, logos, programs, advertising mail outs and in general operating as if he were still a licensee of Manpower. These affidavits also alleged that Wilkinson's competition had a significant adverse effect on Manpower's branch office business and that the dollar volume of business lost by Manpower as a result of Wilkinson's competitive activities would be difficult, if not impossible, to ascertain.

Following a hearing on motions, the district court on May 2, 1974, entered an order enjoining Wilkinson from continuing to use the Manpower tradename, logos or trademark, directing Wilkinson to turn over his customer lists to Manpower and denying Manpower's motion for preliminary injunction "without prejudice to plaintiff's right to renew its motion for a preliminary injunction after counsel have filed supplemental briefs directed solely to the conflicts of law issue which may affect the validity and/or enforceability of the restrictive covenant." Thereafter, Manpower renewed its motion for preliminary injunction and on September 23, 1974, following a hearing, the court entered an order denying the motion for preliminary injunction.

The district court found that the affidavits established to the court's reasonable satisfaction that Manpower would suffer irreparable harm if the preliminary injunction were not granted, since the loss of business and the amount of Manpower's future damages as a result of Wilkinson's continued competition would be difficult or impossible to ascertain.

The court also found that since the license agreement between Manpower and the Wilkinsons provided that it should be "interpreted and governed by the laws of

the State of Wisconsin," Wisconsin law governed the validity of the non-compete provision contained in the license agreement.

However, although the court stated that the non-compete provision might be valid in Wisconsin, it did not reach this issue since the provision was nonetheless unenforceable in Florida if its enforcement would be obnoxious to the established public policy of Florida.

Finally, the court held that:

"In *Kaye v. Orkin Exterminating Company, Inc.*, 472 F.2d 1213, 1215 (5th Cir. 1973) the Fifth Circuit Court of Appeals stated that Section 542.12 *Florida Statutes*, establishes the public policy of Florida. The Court, therefore, rules that the non-competitive provision contained in the Manpower license agreement, even if valid under Wisconsin law, does not fall strictly within the exception described in Section 542.12 and is, therefore, obnoxious to Florida public policy and will not be granted comity in Florida."

The Florida statute governing contracts in restraint of trade provides:

"(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsection (2) and (3) hereof, is to that extent void. (2) One who sells the good will of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the good will from him, and so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction. (3) Partners may, upon or in anticipation of a dissolution of the partnership, agree that all or some of them will not carry on

a similar business within a reasonably limited time and area." Section 542.12, *Florida Statutes.*

■■■ Were the contract at issue here governed by Florida law, the restrictive covenant would be unenforceable because it is not among the statutorily provided exceptions. But the contract itself provides that it is to be "interpreted and governed by the laws of the State of Wisconsin," and this provision would be recognized by Florida. *Davis v. Ebsco Industries, Inc.,* 150 So.2d 460 (3rd D.C.A.Fla.1963). Florida would not, however, enforce any provision that stood in conflict with its own public policy.

■■■ Upon close examination of the relevant law, we have determined that this restrictive covenant does not conflict with the public policy of Florida for three reasons. In the first place, the fact that the covenant is not a statutory exception does not mean it contravenes Florida's public policy. "Mere difference between the law of the forum and that of the foreign state does not of itself prevent enforcement of the foreign law or rights based thereon if such law is not against the public policy of the forum." 6 Florida Jurisprudence, *Conflict of Laws* § 12. This is the restatement rule as well. Restatement 2d, *Conflicts* § 90(b).

Secondly, the Florida courts have not held that Section 542.12 of the Florida statutes is an exclusive list of non-competition contracts that do not contravene public policy. Appellee argues that two Florida cases do establish this principle, but our reading of those cases shows them to be inapposite. In *Cerniglia v. C & D Farms, Inc.,* 203 So.2d 1 (Fla.1967), the Florida Supreme Court stated, "the Chancellor and the district court found the contract not to compete was *unreasonable.* We will not disturb these findings." (Emphasis added.) *Id.* at 2. The restrictive covenant there at issue (an agreement not to compete for 20 years) arose following a sale of corporate stock. It was thus within an express exception to § 542.12, *Fla. Statutes,* but still, of course, subject to disallowance under the statute or

due to public policy if *unreasonable*. Since the contract was governed by Georgia law, the situation in that case called for a determination of reasonableness vis-a-vis public policy. We construe the holding in *Cerniglia*, then, to be that an unreasonable restrictive covenant (there one of twenty years duration) is repugnant to Florida's public policy. That was the holding as well in *Davis v. Ebsco Industries, Inc.*, 150 So.2d 460 (Fla.App.1963), a case involving a restrictive covenant of 20 years duration applicable wherever United States or United Nations military personnel were stationed. We recognize that the Florida District Courts of Appeal in *Davis* and *Cerniglia* stated that § 542.12 of the Florida statutes established the public policy of the state, but we interpret that to refer to the requirement that restrictive covenants where specifically authorized by statute must nonetheless be of a reasonable duration. We also note those statements were dicta and further that the Florida Supreme Court made no such remark in affirming *Cerniglia*.

Similar language in a case decided by this Court was relied on heavily by appellee and was considered controlling by the trial court. In *Kaye v. Orkin Exterminating Co.*, 472 F.2d 1213 (5th Cir. 1973), this Court stated:

> "In *Cerniglia v. C & D Farms, Inc.*, . . . the Florida Supreme Court held a 20-year, no competition covenant to be unreasonable and unenforceable because of the provisions of Section 542.12 . . . which establishes the public policy of Florida. *See also Davis v. Ebsco Industries, Inc.* . . . ." [Cites omitted.] *Id.* at 1215.

As we did with respect to the statement by the Florida District Courts of Appeal in *Cerniglia, supra,* and *Davis, supra* we construe this comment to refer to the fact that insofar as § 542.12 requires authorized restrictive covenants to be reasonable it embodies the public policy of the state. We also note that the statement quoted above was dicta since before discussing the question of the covenant's validity under Florida

law the Court had held that the plaintiff had terminated the entire contract, including the no-competition clause. *Kaye v. Orkin Exterminating Co.*, 472 F.2d 1213, 1215 (5th Cir. 1973).

Thus, there are no controlling Florida or Fifth Circuit cases. Appellee has argued that relevant California case law would bind this Court as well, since Florida's statute was adopted from California's and Florida has stated that it also adopts California's construction. *Akey v. Murphy*, 238 So.2d 94 (Fla.1970). It is unnecessary to determine the validity of this proposition since there are apparently no California or Ninth Circuit cases precisely on point.

Our final rationale for determining that the restrictive covenant at issue here is not repugnant to Florida's public policy is that we find it to be harmonious with the spirit of the statute. Section 542.12 allows covenants preventing the seller of the good will of a business from competing within a "reasonably limited time and area" with the buyer, or likewise preventing an agent or employee from competing with his employer. These situations are highly analogous to that at issue, where the covenant reasonably restricts competition by a franchisee with a franchisor. Thus, we find that this covenant, which in the words of the trial court was "bargained for by the parties and does not offend good morals or natural justice," is not in conflict with the public policy of the State of Florida.

This, of course, leads to the question of whether the covenant at issue would be enforced in Wisconsin. We hold that it would.

Wisconsin courts have long held that covenants restricting competition are valid so long as they are reasonable. *Estate of Paul F. Schroeder v. Gateway Trans. Co., Inc.*, 53 Wis.2d 59, 191 N.W.2d 860 (1971) (prohibition against working in the transportation industry with no geographic or time limit held unreasonable); *Madson v. Johnson*, 164 Wis. 612, 160 N.W. 1085 (1917) (covenant in sale of business contract where veterinarian-vendor agreed not to practice in city of Appleton held reasonable). That

a two-year, six-county restriction such as that at issue here is reasonable in light of Wisconsin case law appears indisputable. A covenant in an employment contract preventing competition for two years in Milwaukee County has been upheld, *Lakeside Oil Co. v. Slutsky*, 8 Wis.2d 157, 98 N.W.2d 415 (1959), and Wisconsin has adopted the Restatement rule that greater restrictions are reasonable in sale contracts than in employment contracts, *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 70 N.W.2d 585, 588 (1955), *citing Rest. Contracts* § 515, Comment b.

Unlike Florida, Wisconsin has no statute of general application regarding the use of reasonable restrictive covenants like that at issue here. Wisconsin does have a statute dealing only with restrictive covenants in employment contracts. Chapter 103.465, *Wisconsin Statutes*, reads as follows:

> "A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

Prior to adoption of this Act in 1957, an unreasonable restrictive covenant in an employment contract would, in effect, be modified and would be enforced *to the extent it was reasonable*; under the statute, this rule of divisibility is no longer followed in employment contract cases. *Lakeside Oil Co. v. Slutsky*, 8 Wis.2d 157, 98 N.W.2d 415, 418-10 (1959). Even this restriction is apparently inapplicable to covenants arising in other contracts. Of course, since the entire covenant before us is reasonable, this question need not be reached. We cite the statute merely to point out that neither its limitations, nor any other statutory limitations, affect this covenant. Rather, its en-

forceability in Wisconsin would depend entirely on its reasonableness. *See Holsen v. Marshall & Ilsley Bank*, 52 Wis.2d 281, 190 N.W.2d 189 (1971).

Although Wisconsin has not been faced with cases involving restrictive covenants in franchisor-franchisee contracts, every indication is that the validity of such covenants would be determined by reference to the "rule of reason." *See Holsen v. Marshall & Ilsley Bank, supra*, 190 N.W.2d at 191; *Milwaukee Linen Supply Co. v. Ring, supra*, 246 N.W. at 568. There is no apparent rationale for distinguishing a franchise from the sale of a business in this context.

The district court denied appellant's motion for a preliminary injunction solely on the ground that the restrictive covenant violated Florida's public policy and that Wisconsin law should not apply even though agreed upon in the contract. We disagree, and we further find that the covenant would be enforceable in Wisconsin and thus, by agreement, must be given effect in Florida. We have considered appellee's other objections to the grant of a preliminary injunction and find them to be without merit.

The judgment is REVERSED and REMANDED for proceedings not inconsistent with this opinion.