**In re KBAR, INC., Debtor.**

**HARDEE'S FOOD SYSTEMS, INC., Plaintiff,**

v.

**KBAR, INC., Steven E. Brown, Gary L. Knox, Defendants.**

**Bankruptcy No. 88–71173.**
**Adversary No. 88–7174.**

United States Bankruptcy Court, C.D. Illinois.

Nov. 3, 1988.

Breen O. Condon, Rocky Mount, N.C., John L. Swartz, Springfield, Ill., John F. Dienelt, Washington, D.C., for Hardee's.

Lisa Manion, Springfield, Ill., for Franchise P. Finance.

Asher O. Geisler, Decatur, Ill., John M. Myers, Springfield, Ill., for KBAR, Brown and Knox.

## OPINION

LARRY L. LESSEN, Chief Judge.

This case comes for hearing on Hardee's Food Systems, Inc.'s ("Hardee's") motion for partial summary judgment to enforce the post-termination restrictive covenant contained in KBAR, Inc.'s ("Debtor") license agreements, which were signed when KBAR, Inc. became a Hardee's franchisee. The restrictive covenant prevents KBAR, Inc. from offering, for a one year period and in a specified geographic radius, the "same or similar" products and services at its Joe Cracker's restaurants which it offered as a Hardee's franchisee. KBAR, Inc. filed its Chapter 11 petition in bankruptcy in July 1988, as did its chief operating officers and only shareholders, Steven Brown and Gary Knox.

Rule 56 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7056 allow the judgment sought to be rendered if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. After considering the arguments of counsel and supporting material, it is the judgment of this Court to grant Hardee's motion for the reasons set forth below.

In this Court's opinion of August 16, 1988, a final ruling was made that the franchise agreements between Hardee's and KBAR, Inc. were terminated prior to the commencement of Debtor's bankruptcy. Termination of the franchise agreement triggers the post-termination restrictive covenant. KBAR, Inc.'s attorney argued at the October 4, 1988, hearing on the present motion that the Court's August 16, 1988, opinion was "an indication of the Court's feelings about the likelihood of ultimate success on the merits, not a ruling with respect to the merits." [Tr. 30] The Court does not agree, since the opinion substantially determined the rights of a creditor. Bankruptcy Rule 7054(b) allows final judgment on fewer than all claims when there is no just reason for delay. Since it is material to the administration of the bankrupt estate whether the franchise agreement is included in the estate, there was no just reason to delay a determination on the merits. If Debtor disagreed with this Court's ruling, an appeal with the U.S. District Court should have been filed within ten days, pursuant to Bankruptcy Rule 8002. *See In re Morse Electric Co., Inc.,* 805 F.2d 262 (7th Cir.1986).

An assessment of whether the post-termination restrictive covenant is reasonable is a question of law. *See In re Talmage,* 758 F.2d 162, 166 (6th Cir.1985). The parties dispute what criteria to use. Debtor argues that the standard ought to be that applied to restrictive covenants covering employer-employee agreements. Relying on *Talmage,* Hardee's argues that the standard should be that used in sale of business situations (including the sale of its good will).

Commentators have long recognized the hybrid nature of franchising, "which typically partakes of a number of relationships, while not totally embracing any of them." Pengilley, *International Franchising Arrangements and Problems in Their Negotiation,* 7 Nw.J.Int'l.L. & Bus. 185, 186 (1985). The marketing relationships include: "(1) employer and employee; (2) distributorship; (3) licensor and licensee; (4) agency; or (5) vendor and purchaser, to varying degrees, depending upon individual transactions." *Id.* Franchising becomes more than the sum of its parts, making application of the correct standard essential for a just result. In *Wilkinson v. Manpower, Inc.,* 531 F.2d 712 (5th Cir. 1976), the Court reasoned, "Although Wisconsin has not been faced with cases involving restrictive covenants in franchisor-franchisee contracts, every indication is that the validity of such covenants would be determined by reference to the 'rule of reason.' There is no apparent rationale for distinguishing a franchise from the sale of a business in this context." *Id.* at 717.

This Court is persuaded that the correct standard in this case, which involves a service franchise as well as distribution and use of the franchisor's supplies, is that for licensor-licensee restrictive covenants. Debtor as franchisee had access to Hardee's uniform system, know-how, and technical assistance, including confidential marketing and operational information. This mix more closely resembles the license relationship, because the delivery of a service is primary, rather than the distribution and use of the franchisor's products.

■ In Illinois, the standard for licensor-licensee restrictive covenants is: "whether the restriction is reasonable, or 'necessary in its full extent for the protection' of the one party 'and at the same time not oppressive' to the other party 'or injurious to the interests of the general public.'" *Talmage*, 758 F.2d at 165 (*citing O'Sullivan v. Conrad*, 44 Ill.App.3d 752, 756, 3 Ill.Dec. 383, 358 N.E.2d 926). Of course, since a restrictive covenant is a partial restraint of trade, it is necessary to ensure that the covenant's intended effect is not restrictive of competition per se.

The actual post-termination restrictive covenants which Hardee's seeks to enforce regard subject matter, as well as time and geographic restraints. Debtor is not to offer the same or similar products or services for one year within a radius of three miles of its former franchise locations or one and one-half miles of any other Hardee's restaurant (Section XIII of the License Agreement). Hardee's has argued that these restrictions: 1) protect confidential marketing and operational information; 2) limit Debtor's use of the training given and knowledge imparted; 3) allow time for the public association of the former franchisee with the franchise system to dissipate; and 4) allow Hardee's the opportunity to refranchise the areas without competition from the former franchisee. The Court finds these arguments persuasive in examining the covenants, and finds those covenants reasonable as a matter of law. In its Supplemental Reply Memorandum, 5–6, Hardee's counsel has cited numerous similar restrictive covenants which have

been upheld. These cases support the view that the issue is not a question of fact.

This Court examined one of the geographic restrictions in some detail before determining it was reasonable. That restriction prohibited the opening of a restaurant with the same or similar products or services within a one and one-half mile radius of any other Hardee's restaurant. It is not a per se restriction of competition since it does not actually stop the former franchisee from entering a market in another city. Because its impact on competition is minimal, and because of its short duration, it is an allowable restraint.

Applying the covenants to the situation here, we order Debtor to cease and desist offering the same or similar products or services within the specified contract areas. One major issue between the parties is the menu offered by the Joe Cracker's restaurants. The Court has scrutinized closely the September 9, 1988, affidavit of David Hoban, Director of Franchise Services for Hardee's. Mr. Hoban described menu items for Hardee's and Joe Cracker's, and those listed are virtually identical (Mr. Hoban's list was not all inclusive). Hardee's has argued that Debtor's restaurants should not be allowed to sell hamburgers at all. Although the Court agrees that the Joe Cracker's menu must change, it declines to make marketing decisions for the Debtor and prohibit Joe Cracker's from selling hamburgers. We wish to give maximum flexibility to the Debtor to redesign its menu selections, and give Joe Cracker's the opportunity to establish a new, separate identity from Hardee's and continue as a going concern.

Consequently, within thirty days of this Order KBAR, Inc. must redesign its Joe Cracker's menu so that it does not offer products substantially similar to Hardee's. Debtor must also take whatever other action is necessary to ensure compliance with the restrictive covenants. If the form and identity of the Debtor's business cannot be agreed upon by the parties, it may again become an issue for this Court.

For the foregoing reasons, Plaintiff's motion for partial summary judgment is granted.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.