Terry SCOTT, David E. Ray, Leigh Gardner Ray, David R. Prinsze, Susan M. Kennedy, and Employee Leasing Associates Inc., a California corporation, Plaintiffs,

v.

SNELLING AND SNELLING, INC., a Pennsylvania corporation, Defendant.

No. C–89–2595 EFL ARB.

United States District Court, N.D. California.

March 9, 1990.

David J. Butler, Brownstein, Zeidman & Schomer, Washington, D.C., Charles G. Miller, Bartko, Welsh, Tarrant & Miller, San Francisco, Cal., for defendant.

Ignazio J. Ruvolo, Bronson, Bronson & McKinnon, San Francisco, Cal., for plaintiffs.

### ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

LYNCH, District Judge.

This case involves a dispute arising from the termination of a number of virtually identical franchise agreements for the operation of temporary personnel service (TPS) agencies under the Snelling and Snelling name between the plaintiffs and defendant,[1] and the subsequent formation of competing businesses by the plaintiffs. Plaintiffs brought this action upon their termination of the agreements seeking damages for breach of contract, rescission and a declaratory judgment. Snelling counterclaimed, alleging breach of contract and unfair competition; it seeks damages and injunctive relief. The parties have made cross-motions for partial summary judgment on the single issue of whether the covenants restricting competition in the franchise agreements are enforceable against the plaintiffs.

## I. FACTUAL BACKGROUND

The undisputed facts which gave rise to this case are as follows. In late 1985, plaintiffs David E. Ray, Leigh Gardner Ray and Terry Scott entered into a franchise agreement with Snelling to operate a TPS in Walnut Creek, California, under the Snelling name. The agreement provided, *inter alia*, for the support services such as training and operating procedure manuals to be provided by Snelling to the plaintiffs, for the terms by which Snelling licensed its proprietary marks to plaintiffs, and for the financial contributions which plaintiffs were required to make to Snelling in return for the license to operate the TPS franchise. The agreement also included the provisions for termination by plaintiffs[2] and the covenant by plaintiffs not to compete with another Snelling TPS franchisee in their former franchise area for two years after termination[3] which are the sub-

---

1. Defendant will hereinafter be referred to as Snelling.

2. Section 12 of the franchise agreement reads, in pertinent part:

 **12(a) Voluntary Termination**
 LICENSEE may voluntarily terminate this Agreement by giving written notice to Snelling. The effective date of termination by LICENSEE shall be the later of the date stated in LICENSEE's notice and the 180th day after SNELLING receives LICENSEE's notice.
 . . . .
 **12(e) LICENSEE's Termination Duties**
 If this Agreement terminates for any reason, LICENSEE shall:
 . . . .
 12(e)(5) stop operating a temporary personnel service, except as permitted by section 13.

3. Section 13 of the franchise agreement reads, in pertinent part:

 **13. COMPETITION AND RULES AGAINST UNREASONABLE COMPETITION**
 . . . .
 **13(b) Competition After Termination**
 If this Agreement is terminated for any reason ... LICENSEE may compete with the Franchise System only according to the following rules:
 . . . .
 13(b)(3) During the transition period [two years after termination pursuant to section 12(a) ], LICENSEE may compete without restriction by this Agreement only if:
 13(b)(3)(A) LICENSEE's competing business is located beyond a radius of 10 statute miles

jects of the cross-motions for summary judgment.

Soon after the completion of the agreement for a Walnut Creek franchise, the same plaintiffs entered into a substantially similar agreement to operate a Snelling TPS franchise in Pleasanton, California. Plaintiff David R. Prinsze also entered into a substantially similar agreement to operate a Snelling TPS franchise in San Jose, California, on May 29, 1987. On July 28, 1988, plaintiff Susan Kennedy joined with Prinsze to form plaintiff Employee Leasing Associates, which took over operation of the San Jose franchise.

Following some difficulties in the franchise relationship between the parties, plaintiffs sent a letter on July 28, 1989 informing Snelling of the filing of the original complaint in this action as well as their intention to terminate their franchise agreements immediately. The letter also informed Snelling of the plaintiffs' intention to form competing TPS businesses at the locations from which they formerly operated their Snelling TPS franchises.

After plaintiffs filed an amended complaint, Snelling filed a motion seeking a preliminary injunction prohibiting the operation of the competing TPS agencies by the plaintiffs pursuant to the restrictive covenants in the franchise agreements. On October 5, 1990, the Court granted in part Snelling's motion for a preliminary injunction, requiring plaintiffs to cease use of the Snelling name in competing businesses, to provide Snelling with lists identifying customers and employees, to assign all telephone numbers previously identified as

Snelling numbers to Snelling and to allow Snelling to inspect plaintiffs' financial records. The Court did not, however, enjoin the plaintiffs from continuing to operate their competing TPS agencies.

The plaintiffs have substantially complied with the Court's preliminary injunction order. Now they have brought this partial summary judgment motion seeking a ruling that the restrictive covenant in the franchise agreements is not enforceable. Snelling seeks a contrary ruling that the covenants are enforceable by cross-motion for partial summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted if the moving party establishes the absence of any genuine issue of material fact which would preclude a ruling by the Court on the motion as a matter of law. Such a showing can be made by an affirmative demonstration in affidavits or declarations by a moving party who bears the burden of proof on the controverted issue at trial. However, in a circumstance where the non-moving party with the burden of proof fails to come forward with any evidence which would create a genuine issue of material fact, summary judgment for the moving party is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987). In addition, a determination of the legal effect of the

---

from the most recent Office Location of LICENSEE's TPS;

13(b)(3)(B) Prior to competing, LICENSEE provides SNELLING with a typewritten list identifying the names, addresses, and telephone numbers of all Clients that purchased services from LICENSEE's TPS during the two years before the termination or that placed an order for such services during the 90 days before termination, and LICENSEE enforces a policy of not operating in the temporary personnel service business to directly or indirectly contact, work with, or service any such Clients;

13(b)(3)(C) Prior to competing, LICENSEE provides SNELLING with a typewritten list

identifying the names, addresses, and telephone numbers of all Workers that it employed, listed, or contacted while operating LICENSEE's TPS or otherwise through the use of SNELLING's name or Proprietary Marks during the two years before the termination, and LICENSEE enforces a policy of not directly or indirectly employing, listing, or contacting, any such Workers.

Section 13(g) of the Agreement provides for liquidated damages for Snelling in the event of violation of these provisions by the licensee, while section 12(j) enables Snelling to seek an injunction to enforce these provisions.

plain language of a contract where the intention of the parties is not in dispute is a question of law well suited to a grant of summary judgment. *Edison v. Reliable Ins. Co.,* 664 F.2d 1130, 1131 (9th Cir.1981).

■■■ Here, the validity of the restrictive covenant in the franchise agreements is a question of law. Thus, the allocation of burdens of proof is irrelevant, for the most part, to the decision whether to grant summary judgment on the issue. This statement should be qualified by the recognition that, under California law,[4] a covenant restraining competition will be enforced when the subsequent competition constitutes unfair competition, such as the unauthorized use of trade secrets or confidential information. *See, e.g., American Paper & Packaging Products, Inc. v. Kirgan,* 183 Cal.App.3d 1318, 228 Cal.Rptr. 713 (1986); *Moss, Adams & Co. v. Shilling,* 179 Cal.App.3d 124, 224 Cal.Rptr. 456 (1986). The determination of whether a particular type of information is confidential or a trade secret would generally be a question of fact, with the party asserting the existence of a trade secret bearing the burden of proof. *Tele–Count Engineers, Inc. v. Pacific Tel. & Tel. Co.,* 168 Cal. App.3d 455, 463, 214 Cal.Rptr. 276 (1985). As such, as discussed below, Snelling would bear the burden of proof on this issue at trial as the party asserting the existence of a trade secret.

### III. DISCUSSION

Plaintiffs make essentially two arguments in support of their position that the covenant restraining competition in the franchise agreements is unenforceable. First, they contend that Snelling is collaterally estopped from claiming that the cov-

enant is valid after having lost on the issue in a previous arbitration based on a similar contract to which Snelling was a party. In the alternative, they assert that California law should govern the determination of the validity of the covenant not to compete and that under California law the covenant is invalid. Each of these contentions will be considered in turn.

### A. COLLATERAL ESTOPPEL

■■ On October 30, 1989, an arbitrator declared that a covenant restraining competition in a franchise agreement between Snelling and another party was unenforceable.[5] Plaintiff asserts that this arbitration result compels this Court similarly to declare the covenant between Snelling and the plaintiffs unenforceable. This is essentially an assertion of the doctrine of nonmutual defensive collateral estoppel, wherein a litigant not a party to a prior case seeks to preclude relitigation of an issue by its current opponent who was a party to the prior case and lost on the very issue which the opponent seeks to relitigate in the current action. *Blonder–Tongue Laboratories v. Univ. of Illinois,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

In order to prevail on an assertion of non-mutual defensive collateral estoppel, plaintiffs must show that:

> 1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* 2) there was a final judgment on the merits; *and* 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.

*Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 874, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978) (emphasis in original).[6] Under this

---

**4.** *See infra* Part III(B) of this opinion which discusses choice of law principles and concludes that California law governs the determination of validity of the covenant not to compete in the franchise agreements.

**5.** This arbitrator's award in the previous case, *Snelling and Snelling v. Stone,* was unpublished. It is attached as an exhibit to the plaintiffs' papers supporting their motion for summary judgment.

**6.** Snelling correctly points out that, because the substantive law to be used in determining the validity of the restrictive covenant is California law, *see infra* Part III(B) of this opinion, California's law of collateral estoppel should apply in the context of this motion as well. *St. Paul Fire & Marine Ins. Co. v. Weiner,* 606 F.2d 864, 868 (9th Cir.1979). However, regardless of which law applies, it is clear that the requirements set forth in *Clemmer* are minimum requirements of due process of law which must be coextensive

standard, the plaintiffs' assertion of collateral estoppel must fail for two reasons.

■ First, the issues in the two cases do not appear to be identical. Review of the documents submitted by plaintiffs in support of their assertion of collateral estoppel reveals that the franchise agreement at issue in the prior arbitration related to a franchise for a permanent employment agency operation rather than a TPS franchise agreement at issue here. This distinction is important because, as will be discussed below, the law of trade secrets in California relating to these different types of businesses varies. Thus, if California law applies to the determination of validity of the covenant restraining competition, the results of the determination may be different in the permanent employment agency context than in the TPS context.

■ Secondly, under California law, an arbitrator's award does not constitute a "final judgment" which would enable a party to invoke the doctrine of collateral estoppel until a judgment has been entered by a court and is no longer reviewable. *State Farm Mutual Auto. Ins. Co. v. Super. Ct.*, 211 Cal.App.3d 5, 16, 259 Cal.Rptr. 50 (1989); *Sartor v. Super. Ct.*, 136 Cal. App.3d 322, 328, 187 Cal.Rptr. 247 (1982). Here, the award of the arbitrator invalidating the covenant has apparently not been confirmed by either a federal or state court. Hence, it does not constitute a final judgment for collateral estoppel purposes.

Accordingly, for these two reasons, the Court holds that Snelling is not barred from relitigating the validity of the restrictive covenant simply as a result of the earlier arbitration.

## B. ENFORCEABILITY OF THE COVENANT UNDER APPLICABLE LAW

Plaintiffs' next contention is that the covenant restraining competition in the franchise agreements is unenforceable as a matter of law. In support of this conten-

tion they rely on California law despite a clause in the agreements which states that Pennsylvania law shall govern the interpretation of the contract. Considering the widely different approaches which the two states take to non-competition covenants, the outcome of the determination of the appropriate law to apply to the interpretation of the contract is largely dispositive of the issue of the enforceability of the covenant. Thus, the Court first will discuss the choice of law issue, and then proceed to analyze the enforceability of the covenant under the appropriate law.

### 1. Choice of Law Governing Interpretation of the Covenant

As a federal district court sitting in diversity jurisdiction, the Court must decide which state's law applies to the substantive legal issues raised by the dispute in the absence of superseding federal law. This choice of law question is normally determined by reference to the choice of law rules of the state in which the district court sits. *General Accident Ins. Co. v. Namesnik*, 790 F.2d 1397, 1398 (9th Cir.1986). The Court will therefore apply California choice of law principles to this case.

■ Generally speaking, under California choice of law principles, a provision in a contract dictating the law by which the contract should be interpreted is given deference. However, California law will not give force to a choice of law clause where the contract contains a provision which violates a "strong California public policy." *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 673, 97 Cal.Rptr. 811 (1971).

■ California Business and Professions Code section 16600,[7] which states that "[e]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," has been held by the California courts to represent a strong pub-

---

under federal and state law. *Clemmer*, 22 Cal.3d at 874, 151 Cal.Rptr. 285, 587 P.2d 1098.

**7.** California Business and Professions Code section 16600 will hereinafter be referred to as

"section 16600." All other statutory references unless otherwise noted likewise refer to the California Business and Professions Code.

lic policy which would override the choice of law provision in the contract at least with regard to the restrictive covenant. *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965); *Frame*, 20 Cal.App.3d at 673, 97 Cal.Rptr. 811. *See also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1338 (9th Cir.1980). Thus, whether section 16600 applies to a covenant restricting competition in a franchise agreement is the crucial question in deciding the choice of law issue.

Snelling contends that this is a question of first impression under California law. This contention is not entirely correct. At least one California case has considered section 16600 in connection with franchise agreements and has relied on it, in conjunction with state anti-trust statutes, to invalidate a covenant restricting competition by a franchisee. *See LaFortune v. Ebie*, 26 Cal.App.3d 72, 102 Cal.Rptr. 588 (1972). However, even accepting *arguendo* Snelling's position that application of section 16600 to a franchise agreement is a question of first impression under California law, the Court finds that the California courts would apply section 16600 to a franchise agreement containing a covenant restraining competition.

The Court bases this conclusion on well-settled principles of statutory interpretation.[8] It is beyond dispute that in matters of statutory interpretation, a court should look to the language of the statute itself, attributing to the words used in the statutory language their plain and ordinary meaning. Only when there is a "clearly expressed legislative intention to the contrary" should a court interpret a statute in a manner inconsistent with the ordinary meaning of its language. *American To-*

bacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982).

In the Court's view, the import of the statutory language of section 16600 is clear. Section 16600 says, *"Every* contract by which *anyone* is restrained from engaging in a lawful profession, trade, or business is to that extent *void"* (emphasis added). A simple reading of this statute, giving the words their ordinary meaning, demonstrates that the California state legislature intended section 16600 to apply to any sort of contract which contains a covenant restraining competition.

Despite this, however, Snelling urges a different interpretation on the Court. Snelling cites the California Franchise Relations Act, Cal.Bus. and Prof.Code § 20000 *et seq.*, for the proposition that it manifests a clear legislative intent to exempt franchises from the broad sweep of the language of section 16600. Specifically, Snelling argues that section 20025 of the Franchise Relations Act governing non-renewal of franchise agreements specifically prohibits a franchisor from enforcing a covenant restraining competition, while section 20020 governing termination of franchise relationships includes no such prohibition. From this, Snelling surmises, the Court should conclude that the legislature clearly intended to exempt terminated franchise agreements (such as the agreements in this case) from section 16600, because it would have been surplusage to have included the prohibitory language in section 20025 if section 16600 already achieved the prohibition of covenants not to compete.

■ This is argument by negative implication and is not an appropriate method of statutory interpretation. Rather than adopt a contorted interpretation of crystal clear statutory language as that urged upon the Court by Snelling, the Court pre-

---

**8.** Snelling's position that section 16600 should not apply in this case as a matter of statutory interpretation is, to say the least, disingenuous. On the one hand, Snelling argues that the broadly phrased language of section 16600 does not apply to franchise agreements. On the other hand, Snelling argues that a great number of states have applied substantially similar statutes to franchise agreements, albeit with a result more favorable to Snelling's ultimate position

than the result which plaintiffs urge here. *See, e.g., Gafnea v. Pasquale Food Co., Inc.,* 454 So.2d 1366 (Ala.1984); *Wilkinson v. Manpower, Inc.,* 531 F.2d 712 (5th Cir.1976); *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207 (1976). The Court views the application of statutes similar to section 16600 to the franchise context by other state courts as further support for its holding here.

fers to follow the more traditional methodology of statutory interpretation, accepting that the legislature means what it says: *Every* contract which contains a covenant restraining *any* person from engaging in a lawful business is to that extent void, including franchise agreements.

▅ Also in support of its position that section 16600 should not apply to the franchise agreements in this case, Snelling contends that a franchise agreement is akin to a sale of goodwill in a business, which is exempted from section 16600 by a narrowly drawn statutory exception in Business and Professions Code section 16601. Snelling cites no authority for this proposition and the Court has found none. Snelling simply analogizes a franchise relationship to a sale of goodwill in a business since one of the major elements of consideration provided by the franchisor to the franchisee is the goodwill which attaches to the franchisor's name.

The Court does not strictly agree with this analogy. While it is true that the use of the franchisor's goodwill is one of the major benefits received by the franchisee from the franchise relationship, the franchisor simply does not sell its goodwill to the franchisee.[9] Since the opportunity to utilize the goodwill by the franchisee is revocable, it is more like a lease than a sale of the goodwill; the franchisor agrees that the franchisee may benefit from the goodwill for a specified period of time, and for a specified price. Indeed, considering the periodic payments normally required of franchisees by franchisors during the course of the franchise relationship, the franchisor continues to benefit from its goodwill throughout the franchise relationship, something which would not normally continue after a sale.[10]

All of the foregoing distinctions between franchise agreements and sales of goodwill in a business exist in this case. Thus, in light of the broad language of section 16600 and in the absence of contrary authority, the Court cannot hold that the franchise agreements at issue in this case constitute sales of goodwill in a business under California law as set forth in section 16601.

▅ Therefore, the Court holds that it should apply California law to the question of the enforceability of the covenants restricting competition in the franchise agreements in this case despite the choice of law provision nominating Pennsylvania law as controlling interpretation of the agreements. This is so under California choice of law principles because of the strong public policy of California embodied in section 16600, the lack of an applicable statutory exception to section 16600, and the broadly inclusive language of the statute.

## 2. Application of California Law to the Restrictive Covenant

Having determined that California law should be applied to the substantive elements of this dispute, the next question becomes whether California courts would, as a matter of law, permit the enforcement of the covenant restraining competition in the franchise agreements. Despite the broad language of section 16600, Snelling makes two contentions in support of its assertion that the covenants should be enforceable. First, Snelling argues that other states with statutes substantially similar to section 16600 apply a "rule of reason" to the interpretation of covenants restraining competition in the franchise agreement context, applying a test which balances the franchisor's legitimate interests in enforc-

---

**9.** This is abundantly clear in this case after an examination of the franchise agreements, which unequivocally state in section 4(d): "All goodwill associated with the [Snelling TPS] system and the Proprietary Marks shall belong exclusively to SNELLING." Furthermore, California courts hold that goodwill can be owned only by the owner of the business to which the goodwill attaches. *Golden State Linen Service, Inc. v. Vidalin,* 69 Cal.App.3d 1, 10, 137 Cal.Rptr. 807 (1977). In light of the above contractual provi-

sion, then, the position that a franchisor sells its goodwill by entering into a franchise agreement while retaining its ownership of the goodwill is patently untenable.

**10.** Section 9(d) of the franchise agreements in this case require the plaintiffs to pay to Snelling, after an initial franchise fee, 5% of their monthly net receipts.

ing the restrictive covenant versus the policy reasons which underlie the prohibitory statutes. Secondly, Snelling contends that California law recognizes a judicially created exception to section 16600 when the ex-franchisee engages in unfair competition against its former franchisor. Under either of these standards, Snelling argues, its restrictive covenants should be enforced against the plaintiffs. The Court disagrees for the following reasons.

a. California Courts Do Not Apply a "Rule of Reason" Under Section 16600

 Snelling is incorrect in its contention that the California courts apply a "rule of reason" to covenants restraining competition. It is true that a number of states have abandoned the common law prohibition of covenants restraining competition in the employment agreement context, adopting instead a balancing approach even in the face of statutes like section 16600. *See, e.g., Gafnea v. Pasquale Food Co., Inc.,* 454 So.2d 1366 (Ala.1984). It may even be correct to go so far as to say that this "rule of reason" represents a majority rule among jurisdictions which have considered the question.[11]

However, the California courts have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat. Rather, the California courts have repeatedly held that section 16600 should be interpreted as broadly as its language reads. *Muggill,* 62 Cal.2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965); *Bos-*

*ley Medical Group v. Abramson,* 161 Cal. App.3d 284, 288, 207 Cal.Rptr. 477 (1984). The only possible such limitation which has been recognized by the California courts is that only restrictive covenants which prohibit an individual from pursuing an *"entire* business, trade, or profession...." are invalid under section 16600. *Boughton v. Socony Mobil Oil Co.,* 231 Cal.App.2d 188, 192, 41 Cal.Rptr. 714 (1964) (emphasis in original); *see also Campbell v. Board of Trustees of Stanford Univ.,* 817 F.2d 499 (9th Cir.1987).

Nevertheless, even recognizing this limitation of section 16600, a California Court of Appeals case more recent than *Boughton* has considered, and invalidated, a covenant in an independent contractor's agreement which limited a doctor's right to compete in a specified geographical area after termination of the agreement. *Bosley Medical Group,* 161 Cal.App.3d at 287, 207 Cal.Rptr. 477. That case provides strong support for the position that the covenant involved here would not be enforced by the California courts because the restrictive covenant in *Bosley Medical Group,* like the covenant here, contained strict geographical and temporal limitations on the right to compete of the party against whom the covenant was sought to be enforced.[12]

Thus, the Court holds that California does not follow a "rule of reason" to be applied in the interpretation of covenants restraining competition under section 16600. Furthermore, while the California courts may, in some circumstances apply a "rule of reason" to only partial restrictions

---

**11.** *But see Bayly, Martin & Fay, Inc. v. Pickard,* 780 P.2d 1168 (Okl.1989). In *Bayly,* a case cited by Snelling in support of its position, the Oklahoma court explicitly recognized in interpreting a statute similar to section 16600 that California courts do *not* follow the "majority" rule of reason. *Id.* at n. 9. Similarly, in another case cited by Snelling, the court in *Wilkinson v. Manpower, Inc.,* 531 F.2d 712 (5th Cir.1976), ruled that Florida's statute like section 16600 *would* have invalidated a covenant very similar to those in issue here. The court in *Wilkinson,* however, relied on Florida choice of law principles to defer to the parties' contractual choice of Wisconsin law on the ground that enforcement of the covenant would not have been against the public policy of Florida. *Id.* at 715–16. The court then held that the covenant should be

enforced under Wisconsin law, which had no such statute similar to section 16600. *Id.* at 717.

**12.** It is also worth noting that *Bosley Medical Group* involved the termination of an independent contracting agreement. While such an agreement is not exactly analagous to a franchise agreement, it is also not strictly an employment agreement between an employer and an employee. Thus, although it is not exactly on point, *Bosley Medical Group* provides helpful guidance in deciding the instant case once it is recognized that section 16600 applies to franchise agreements even outside of the normal employment contract context, just as it applies to independent contracting agreements.

on competition, they have not recognized geographical and temporal restrictions on competition to be merely partial restrictions. Rather, the California courts do not give force to such restrictions. This Court, applying California law, cannot do so in this case either.

b. The Judicially Created Exception to Section 16600 Where a Competitor Utilizes Trade Secrets

Snelling's other theory which would support enforcement of the covenant restraining competition in the franchise agreements under California law is more compelling. This second theory relies on a case including a comprehensive review of California law on the question of enforceability of covenants restraining competition which concludes that if a former employee uses a former employer's trade secrets or otherwise commits unfair competition, California courts recognize a judicially created exception to section 16600 and will enforce a restrictive covenant in such a case. *Hollingsworth Solderless Terminal*, 622 F.2d at 1338. Even though the opinion in that case authored by Judge (now Justice) Kennedy has been largely superseded in its discussion of what constitutes a trade secret under California law by the Uniform Trade Secrets Act (UTSA), Cal.Civ.Code § 3426, *et seq.*, the general principle enunciated in that case, and relied on by Snelling, appears to remain a proper statement of the law in California. *See, e.g., American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal.App.3d 1318, 228 Cal.Rptr. 713 (1986); *Moss, Adams & Co. v. Shilling*, 179 Cal.App.3d 124, 224 Cal.Rptr. 456 (1986).

Thus, in order to survive plaintiffs' motion for summary judgment by relying on this judicially created exception to section 16600, Snelling must demonstrate the presence of a genuine issue of material fact as to the existence and use of trade secrets by the plaintiffs in competition with Snelling. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This is so because Snelling would have the burden of proof on this issue at trial. *Tele–Count Engineers, Inc.*

*v. Pacific Tel. & Tel. Co.*, 168 Cal.App.3d 455, 463, 214 Cal.Rptr. 276 (1985). While it is true that the existence of a trade secret would normally constitute a factual question, the Court notes that some types of information may not be a trade secret as a matter of law, *Moss, Adams & Co.*, 179 Cal.App.3d at 130, 224 Cal.Rptr. 456, and that summary judgment may be appropriate in cases where a party has failed to meet its burden of proof for the purposes of a summary judgment motion by generating through evidentiary submissions a *genuine* issue of *material* fact. *Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987).

■■■■ Snelling's first argument that the plaintiffs have improperly used its trade secrets relies on language in the franchise agreements that its business forms, temporary employee lists and customer lists constitute trade secrets. However, it is well settled under California law that an employer cannot restrain a former employee from conduct other than that which would constitute unfair competition or use of trade secrets subject to judicial protection. *American Paper & Packaging*, 183 Cal. App.3d at 1325, 228 Cal.Rptr. 713; *Moss, Adams & Co.*, 179 Cal.App.3d at 130, 224 Cal.Rptr. 456. Thus, Snelling's argument in reliance on contractual language begs the question: before the Court can enforce the covenant restraining competition in the franchise agreements on the basis of use of trade secrets, it must determine for itself whether the information allegedly used constitutes a trade secret subject to judicial protection at all.

■■■■ As such, Snelling's next argument is that customer lists are trade secrets in the employment agency context under Business and Professions Code section 16607. While this would appear to be true on its face, Business and Professions Code section 9902 specifically exempts temporary personnel agencies such as the TPS franchises in question here from its defini-

tion of employment agencies.[13] Furthermore, the literal terms of section 16607 apply to employer/employee relationships, not to franchise agreements such as those at issue here.[14] For these two reasons, then, section 16607 cannot be interpreted to define explicitly the customer lists in this case as trade secrets.

■ Absent conclusive contractual or statutory support, Snelling must rely on the body of California law which defines trade secrets to make the showing necessary to survive plaintiffs' motion for summary judgment. Effective January 1, 1985, California adopted the UTSA, Cal.Civ. Code § 3426, *et seq.*, which was intended by the legislature to codify the results of the "better-reasoned cases" concerning the definition of trade secrets and their misappropriation. *American Paper & Packaging*, 183 Cal.App.3d at 1324, 228 Cal.Rptr. 713. The USTA has, for the most part, superseded prior California common law on trade secret issues. *Id.* Snelling's contention that its customer lists, temporary employee lists and business forms and procedures are trade secrets must therefore be tested under the standards set forth by the UTSA.

Section 3426.1(d) of the UTSA defines a trade secret as information which:

> (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Under the first prong of this test, California courts have held that information which is readily obtainable through public sources such as directories do not derive the independent economic value necessary to the existence of a trade secret. *Moss, Adams & Co.*, 179 Cal.App.3d at 130, 224 Cal.Rptr. 456. In addition, information which is not exclusive or is generally in use by good faith competitors also cannot be classified as a trade secret. *American Paper & Packaging*, 183 Cal.App.3d at 1326, 228 Cal.Rptr. 713. With this standard in mind, the Court now analyzes each of Snelling's contentions regarding the existence and use of its "trade secrets."

The assertion that the customer lists constitute a trade secret in the context of a TPS can be dismissed as a matter of law without much difficulty. As indicated in the plaintiffs' evidentiary submissions, and uncontroverted by Snelling, the typical customers of a TPS business are large and small companies of all sorts, easily discoverable through public sources. Plaintiffs have also demonstrated for the purposes of their motion that they developed the customer lists through their own efforts, personal knowledge and business contacts. In such circumstances, the California courts have repeatedly held that a customer list does not constitute a trade secret for the purposes of enforcing a covenant restraining competition because "[e]quity has no power to compel a man who changes employers to wipe clean the slate of his memory." *Moss, Adams &*

---

**13.** Section 9902 was repealed by Civil Code section 1812.500 effective September 25, 1989. 1989 Cal. Stat. ch. 704 § 2. The definition of *employment agency* in Civil Code section 1812.500 does not specifically exempt temporary employment agencies from its purview and would hence seem to apply to the TPS franchises here. However, since the conduct upon which this action is based occurred prior to its effective date, section 1812.500 would apply to this case only if it were construed to have retroactive operation. Under well-settled principles of both federal and California law, a statute is presumed to operate only prospectively unless the legislature has manifested a clear intention that the statute should operate retroactively. *United States v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 412–13, 74 L.Ed.2d 235

(1982); *Evangelatos v. Super. Ct.*, 44 Cal.3d 1188, 1206–07, 246 Cal.Rptr. 629, 753 P.2d 585 (1988). Indeed, California Civil Code section 3 requires an express declaration by the legislature in order for its provisions to be retroactive. No such declaration exists in Civil Code section 1812.500. It therefore should be applied only prospectively and not to this case.

**14.** The literal language of section 16607 refers to employers and employees. It is thus to be distinguished from section 16600 which refers to "every contract" and "any person." Using the usual canons of statutory interpretation, the Court considers that it is not anomalous to conclude, as it has in this case, that the sweep of section 16600 is broader than section 16607.

*Co.,* 179 Cal.App.3d at 129, 224 Cal.Rptr. 456 (quoting *Avocado Sales Co. v. Wyse,* 122 Cal.App. 627, 634, 10 P.2d 485 (1932)); *see also Aetna Bldg. Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11 (1952); *American Paper & Packaging,* 183 Cal. App.3d at 1325, 228 Cal.Rptr. 713. The Court therefore holds that the customer lists at issue in this case do not constitute trade secrets as a matter of law.

Snelling also argues that its business forms and procedures which it provided to the plaintiffs are trade secrets, the continued use of which constitutes unfair competition meriting the enforcement of the restrictive covenant.[15] Snelling produced no evidence in support of this contention, however, which would generate a triable issue of fact. In contrast, the plaintiffs have produced declarations that demonstrate that the forms and procedures are widely used in the industry. Under the prevailing summary judgment standard set forth in *Celotex,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Snelling has not carried its burden necessary to survive summary judgment on the issue whether its business forms and procedures "derive[ ] independent economic value," Cal.Civ.Code § 3426.1(d)(1), since such non-exclusivity of information mitigates strongly against finding the existence of a trade secret. *American Paper & Packaging,* 183 Cal. App.3d at 1326, 228 Cal.Rptr. 713.

These same principles dictate a finding that the temporary employee lists are also not trade secrets. Although the employee lists differ from the customer lists in that they may derive some independent economic value by containing special information such as the employees' skills and preferences which cannot be developed through resort to public sources, the plaintiffs again have demonstrated that they developed these lists through their own efforts. More importantly, the plaintiffs have adduced evidence that these lists are non-exclusive and that the temporary employees typically list themselves with a number of TPS agencies. This evidence was simply not rebutted in the record by Snelling. Summary judgment on the issue is therefore proper.

Thus, Snelling's contention that the covenant restraining competition at issue in this case should be enforced because of the utilization of its trade secrets in accordance with the judicially recognized exception to section 16600 is without merit. This is not to say that the information asserted to be trade secrets here will not be so designated in all circumstances. Rather the Court simply finds that Snelling failed to create an evidentiary record on the various sorts of information sufficient to create a genuine issue of material fact.

## IV. CONCLUSION

Since the plaintiffs have prevailed on the choice of law issue and demonstrated that the covenant restraining competition in their franchise agreements with Snelling do not fit into any of the statutorily or judicially created exceptions to section 16600, the Court hereby grants summary judgment to plaintiffs, denies Snelling's cross-motion for summary judgment and holds that the restrictive covenants in this case are not enforceable against the plaintiffs. Even though the parties agreed to include such a covenant in their agreements, enforcement of such covenants would violate a strong public policy in the state of California of encouraging free competition in business endeavors. As the California Supreme Court said long ago:

> Equity will to the fullest extent protect the property rights of employers in their trade secrets and otherwise, but public policy and natural justice require that equity should ... be solicitous for the inherent right in all people, not fettered by negative covenants upon their part to the contrary to follow any of the common occupations of life.... A former employee has the right to engage in a competitive business for himself and to enter

---

15. The Court notes that pursuant to the franchise agreements and the preliminary injunction granted upon Snelling's request, the plaintiffs have returned to Snelling all "confidential systems material" related to the operation of their TPS franchises and have ceased use of Snelling's business forms.

into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition if fairly and legally conducted.

*Continental Car–Na–Var Corp. v. Moseley,* 24 Cal.2d 104, 110, 148 P.2d 9 (1944).

All the Court decides here is that the competition entered into by the plaintiffs with Snelling is within the law's expression of California's strong public policy. The issue of damages arising from the plaintiffs' termination of the franchise agreement still remains. But the Court will not enjoin plaintiffs from competition in a business which the law of California holds is their right.