# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2021AP807

Complete Title of Case:

SECURA INSURANCE, A MUTUAL COMPANY,

      PLAINTIFF-APPELLANT,

    V.

33 ALLENTON VENTURE, L.L.C. AND NORSE BUILDING PRODUCTS,

INC.,

      DEFENDANTS-RESPONDENTS.

---

| | |
|---|---|
| Opinion Filed: | December 7, 2022 |
| Submitted on Briefs: | April 28, 2022 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Barbara A. O'Brien* and *Patryk Silver* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee. |
| Respondents ATTORNEYS: | On behalf of the defendant-respondents, the cause was submitted on the briefs of *William T. Stuart* and *Garret A. Soberalski* of *Meissner Tierney Fisher & Nichols S.C.*, Milwaukee, and *Brent D. Nistler* and *James F. Cirincione* of *Hansen Reynolds LLC*, Milwaukee. |

COURT OF APPEALS
DECISION
DATED AND FILED

December 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP807**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV78

**IN COURT OF APPEALS**

---

SECURA INSURANCE, A MUTUAL COMPANY,

    PLAINTIFF-APPELLANT,

V.

33 ALLENTON VENTURE, L.L.C. AND NORSE BUILDING PRODUCTS, INC.,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 GUNDRUM, P.J. Secura Insurance, A Mutual Company, appeals from an order of the circuit court concluding that insurance coverage exists for damage caused by water that flowed from a broken pipe located below a building

owned by 33 Allenton Venture, L.L.C. and in which Norse Building Products, Inc. was a tenant. Specifically, Secura contends the court erred because the water exclusion in separate insurance policies it issued to 33 Allenton and Norse bars coverage for the damage. Because we agree with Secura, we reverse and remand for the entry of declaratory and summary judgment in its favor.

## *Background*

¶2 The material facts are undisputed. In 2019, a pipe owned by 33 Allenton, located beneath its building, and connected to a municipal water pipe failed, allowing water to escape and cause damage to the basement, foundation, and floors of the building as well as Norse's leased premises and personal property. Prior to that damage occurring, Secura had issued insurance policies to both 33 Allenton and Norse.[1] Secura paid 33 Allenton $32,280 for the cost to repair the pipe itself but maintains that the water exclusion in each policy bars coverage and it owes no additional amounts.

¶3 Secura brought a declaratory judgment action seeking a ruling on the question of coverage. 33 Allenton and Norse counterclaimed for breach of contract and declaratory judgment, and Norse also counterclaimed for promissory estoppel. Secura filed a motion for declaratory judgment and summary judgment and 33 Allenton and Norse filed motions for summary judgment. The circuit court granted 33 Allenton's and Norse's motions, concluding that the policies afford coverage for the water damage. The parties stipulated to the amount of damages, Norse dismissed its promissory estoppel claim, and Secura appeals.

---

[1] The policies are identical in all material respects.

2

## *Discussion*

¶4      We review the circuit court's grant of summary judgment de novo.[2] *Paskiewicz v. American Fam. Mut. Ins. Co.*, 2013 WI App 92, ¶4, 349 Wis. 2d 515, 834 N.W.2d 866.  "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65.  Although declaratory judgment "is addressed to the discretion of the [circuit] court," our review is de novo "[w]hen the exercise of discretion depends upon a question of law" such as the "interpretation of an insurance" policy. *Praefke v. Sentry Ins. Co.*, 2005 WI App 50, ¶5, 279 Wis. 2d 325, 694 N.W.2d 442.

¶5      "Insurance policies are contracts, and they should be interpreted as such." *Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶18, 371 Wis. 2d 478, 885 N.W.2d 591.

> Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties.  Insurance policies are construed as they would be understood by a reasonable person in the position of the insured.  However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium.

*American Girl, Inc.*, 268 Wis. 2d 16, ¶23 (citations omitted).  "We give words used in [an insurance] policy their plain and ordinary meaning." *Frank v. Wisconsin*

---

[2] The circuit court treated Secura's motion for declaratory judgment and summary judgment as one solely for summary judgment.  This is of no matter as either declaratory judgment or summary judgment is a "proper procedural device[] for resolving insurance disputes," *Young v. West Bend Mut. Ins. Co.*, 2008 WI App 147, ¶6, 314 Wis. 2d 246, 758 N.W.2d 196, and in this case our standard of review is the same, *see Wiegert v. TM Carpentry, LLC*, 2022 WI App 28, ¶19, 403 Wis. 2d 519, 978 N.W.2d 207.

*Mut. Ins. Co*., 198 Wis. 2d 689, 694, 543 N.W.2d 535 (Ct. App. 1995). "When the terms are plain and unambiguous, we will construe the contract as it stands." *Id.* The "[i]nterpretation of an insurance policy is a question of law we review de novo." *Romero*, 371 Wis. 2d 478, ¶18.

¶6      When interpreting an insurance policy, we first "examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there." *American Girl, Inc.*, 268 Wis. 2d 16, ¶24. If, however, the claim triggers an initial grant of coverage under the policy, we then "examine the various exclusions to see whether *any* of them *preclude coverage* of the present claim." *Id.* (emphasis added). "Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain." *Id.* Further,

> [w]e analyze each exclusion separately; *the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it*. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. *An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage* if the insuring agreement precludes it or *if a separate exclusion applies*.

*Id.* (emphasis added).

¶7　　In this case, the parties stipulated that the insureds'[3] claims triggered an initial grant of coverage. Accordingly, we focus on whether a policy exclusion precludes coverage of the claims. *See id.*

¶8　　The water exclusion provides[4] in relevant part that Secura

> will not pay for loss or damage caused *directly or indirectly* by any of the following. Such loss or damage is excluded *regardless of any other cause or event that contributes concurrently or in any sequence* to the loss.
>
> .…
>
> **g. Water**
>
> > **1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water … all whether or not driven by wind (including storm surge);
> >
> > **2.** Mudslide or mudflow;
> >
> > **3.** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
> >
> > **4.** *Water under the ground surface pressing on, or flowing or seeping through*:
> >
> > > **a.** Foundations, walls, floors or paved surfaces;
> > >
> > > **b.** Basements, whether paved or not; or
> > >
> > > **c.** Doors, windows or other openings; or

---

[3] Norse "incorporate[d] by reference the arguments made by 33 Allenton in its response brief." Accordingly, for ease of reading we will hereafter collectively refer to 33 Allenton and Norse as the "insureds."

[4] Each of the policies has an endorsement—the "Water Exclusion Endorsement"—which modifies the insurance provided under the policies. The endorsement states that its language "replaces" the water exclusion language in the original policies. Because the endorsement "expressly states that its provisions should be substituted for those in the main body," we substitute the "Water Exclusion Endorsement" language for the original-exclusion language. *See Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶19, 371 Wis. 2d 478, 885 N.W.2d 591.

**5.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies *regardless of whether* any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature *or is otherwise caused*. An *example* of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

(Emphasis added.) So, as relevant, this exclusion provides that Secura "will not pay for loss or damage caused directly or indirectly by … [w]ater under the ground surface pressing on, or flowing or seeping through: **a.** Foundations, walls, floors or paved surfaces; **b.** Basements …; or **c.** Doors, windows or other openings" "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "regardless of whether" the pressing on/flowing through/seeping through water "is caused by an act of nature or is otherwise caused."

¶9 The insureds advance four reasons why this exclusion does not bar coverage for the damage at issue here. Each of these is easily dispatched.

¶10 The insureds first contend this exclusion's "plain language only applies to damage caused by water that originates from causes outside the Covered Premises," hanging their hat on the "example" in the last paragraph, which they assert "show[s] that [this exclusion] only relates to water from outside causes or malfunctions." The insureds place far too much weight on this example.

¶11 To begin, the language of the water exclusion certainly does not say it "only applies to damage caused by water that originates from causes outside the Covered Premises." Additionally, while water from floods, tides, "overflow of any

6

body of water," and mudslides—in the first two paragraphs of the exclusion—would tend to originate from causes outside a covered premises, such origination cannot be assumed in connection with "[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment"—in the third paragraph—as sump pumps, for example, are on site.

¶12     Furthermore, the sentence immediately preceding the example sentence indicates that the water exclusion applies "regardless of whether" the water under the ground surface that presses on/flows through/seeps through foundations, floors, basements, doors or other openings (or water "that backs up or overflows or is otherwise discharged from a … sump pump" for that matter) is caused "by an act of nature or *is otherwise caused*."  (Emphasis added.)  There is no need for a hurricane or tidal wave to cause a levee or seawall to fail for this exclusion to apply.  Here, the pressing/flowing/seeping water was caused "otherwise" than by an act of nature—i.e., the continuing flow of water after a pipe under the building failed.  The example relied on by the insureds is just that, one example; it does nothing to undermine the plain language of the water exclusion and in no way limits the applicability of this exclusion to only circumstances in which the damage is caused by water that originates from offsite causes.

¶13     Second, the insureds claim the water exclusion does not bar coverage because of language in an exception to one of the more than a dozen other exclusions in the policies—the wear and tear exclusion.  The wear and tear exclusion provides that Secura

> will not pay for loss or damage caused by or resulting from any of the following:
>
> ….
>
> **d. (1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration …;

.…

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere; ….

The parties have stipulated that the pipe at issue in this case failed due to "one or more of the perils listed in" this exclusion.

¶14 Immediately following the seven wear-and-tear-exclusion paragraphs, however, the policies provide an exception to this exclusion: "*But* if an excluded cause of loss that is listed in []**d.(1)** through **(7)** results in a 'specified cause of loss' … we *will pay* for the loss or damage caused by that 'specified cause of loss'…." (Emphasis added.) The insureds refer to this language as the "SCL Provision." "Specified causes of loss" is defined as "fire; lightning; explosion; … *water damage*," and "water damage" means

> *accidental discharge or leakage of water* or steam *as the direct result of the breaking apart or cracking of a plumbing*, heating, air conditioning or other *system* or appliance (other than a sump system including its related equipment and parts), *that is located on the described premises and contains water* or steam.

(Emphasis added.) So, as relevant, the wear and tear exclusion provides that Secura "will not pay for loss or damage caused by or resulting from … [w]ear and tear," but the exception provides that if the wear and tear resulted in "accidental discharge or leakage of water … as the direct result of the breaking apart or cracking of a plumbing … system … that is located on the … premises," Secura "will pay for the loss or damage caused by that" discharge or leakage of water.

¶15 Focusing attention on this exception to the wear and tear exclusion, the insureds assert that this exception is "more specific" than the water exclusion

8

and, quoting ***Scheidler v American Family Mutual Insurance Co.***, 2003 WI App 159, ¶7, 265 Wis. 2d 872, 667 N.W.2d 367, state that "when general and specific provisions are in conflict, the specific provision prevails." The insureds contend that the exception to the wear and tear exclusion "therefore trumps the Water Exclusion." We need not decide which language is "more specific" because the water exclusion unambiguously bars coverage even if another "cause *or* event … contributes concurrently or in any sequence to the loss"—regardless of whether that other event or cause is covered. (Emphasis added.) Here, "[w]ater under the ground surface pressing on, or flowing or seeping through" foundations, walls, floors, basements, doors, or other openings caused the damage at issue, and thus the water exclusion applies. This is so "regardless" of the fact that water escaping through the broken pipe (relevant to the exception to the wear and tear exclusion)—whether considered a prior "cause" or a prior "event"—also "contribute[d] … to the loss."[5]

¶16    Furthermore, and importantly, in light of controlling language in our supreme court's ***American Girl*** decision, more specific or not, the exception to the wear and tear exclusion simply does not affect the water exclusion. In ***American Girl***, our supreme court stated:

> We analyze each exclusion separately; *the inapplicability of one exclusion will not reinstate coverage where another*

---

[5] The insureds go so far as to assert that there "was only one cause of the Covered Premises Damage"—"a water pipe under the office building broke apart." We disagree. Clearly, the damage at issue would not have occurred if the pipe had not broken apart; thus, that was "a" cause of the damage. But there can be no dispute that the continued flowing of water through the pipe after it had failed and that water escaping from the pipe into the surrounding subsurface soil also was a cause of the damage. Had the failure of the pipe been timely detected and the water flowing through it immediately shut off, for example, there would not have been any damage to the building or its contents. That did not happen. Then, the water in the subsurface soil did not simply remain in the soil but it successfully flowed/seeped through the foundation, walls, floors, and/or basement. Had the escaping water not succeeded in penetrating into the building, there would have been either no damage or much more limited damage. Without all three of these causes and/or events occurring, the insureds would not have sustained their damages.

> *exclusion has precluded it.* Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. *An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage* if the insuring agreement precludes it or *if a separate exclusion applies.*

*American Girl*, 268 Wis. 2d 16, ¶24 (emphasis added). Thus, as long as one exclusion in a policy excludes coverage—as the water exclusion does here—it does not matter that another exclusion does not exclude coverage, whether due to an exception or otherwise. Stated differently, assuming the exception to the wear and tear exclusion makes *that* exclusion inapplicable so that coverage is not excluded thereunder, that is the limit of the exception's impact; it does nothing to undermine the fact that the water exclusion excludes coverage for the damage at issue.

¶17 In their briefing, the insureds rely heavily upon the so-called "interplay of the SCL ["specified causes of loss"] Provision and Water Exclusion." While the insureds argue as if the "SCL Provision" is on par with the water exclusion, it is not. Though the insureds' briefing is clearly designed to create the sense that the "SCL Provision" has some significance beyond what it does, in the end, that provision is merely language in an exception to the wear and tear exclusion and thus affects only that exclusion; it has no effect on the many other exclusions in the policy, including the water exclusion. There simply is no "interplay" between the water exclusion and the exception/"SCL Provision" in the wear and tear exclusion as *American Girl* makes clear that "[a]n exception *pertains only* to the exclusion clause *within which it appears*." *Id.* (emphasis added). And, as *American Girl* further instructs, an exception "will not create coverage … if a separate exclusion"—such as the water exclusion here—"applies." *See id.*

¶18 Third, the insureds claim "a reasonable insured … would expect coverage to exist under the [policies] for the Covered Premises Damage." The insureds do not put much effort into developing this issue, affording it only six specific sentences of attention. That said, we conclude that a reasonable insured would read the policies as we do because both the language therein and the law as explained in *American Girl* are plain and unambiguous.

¶19 Lastly, the insureds contend the relevant portions of the policies are ambiguous and thus we should interpret them in their favor. More specifically, they assert that because of the "SCL Provision" in the exception to the wear and tear exclusion, the water exclusion is ambiguous where, as here, the damage is caused by water from a "damaged plumbing system[] on the Covered Premises." There is no ambiguity. As we have discussed, *American Girl* informs that an exception that might restore coverage under one exclusion does not trump another exclusion that bars coverage. Thus, here, the exception to the wear and tear exclusion applies only to that exclusion and in no way undermines the effect of the water exclusion.

¶20 For the foregoing reasons, we conclude that the policies exclude coverage for the damages sought by 33 Allenton and Norse. We reverse and remand to the circuit court to enter declaratory and summary judgment in favor of Secura.

*By the Court.*—Order reversed and cause remanded with directions.