COURT OF APPEALS
DECISION
DATED AND FILED

February 14, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1741**

**STATE OF WISCONSIN**

Cir. Ct. No. **2021CV273**

**IN COURT OF APPEALS
DISTRICT III**

PARENT, DOTT & COMPANY, LTD.,

    PLAINTIFF-APPELLANT,

  V.

SECURA INSURANCE COMPANY,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Parent, Dott & Company, Ltd., appeals from an order concluding that an insurance policy issued by Secura Insurance Company

did not cover damage caused by water leaking from a corroded pipe located underneath Parent's building. Parent argues that the policy provides coverage for the water damage to its building because the policy contains an exception for water damage. We disagree that the exception for water damage applies to the claim in this case. The claimed damage in this case is dictated by a separate water exclusion within the policy. Furthermore, to the extent there were multiple causes of the claimed damage, the policy limits the claim in this case to the water exclusion provision. We therefore affirm the circuit court's order.

## BACKGROUND

¶2      The material facts in this case are undisputed. Secura issued an insurance policy to Parent. As relevant to this appeal, the policy insured Parent's principal place of business in Neenah, Wisconsin, from October 2019 to October 2020.

¶3      In March 2020, Secura received a notice of loss from Parent regarding water damage at Parent's building. The next day, Secura Senior Claims Representative Jim Jacobson inspected the building, and made the following observations: (1) the building was serviced by a copper water supply pipe buried at least four feet below the building's ground-level concrete slab floor; and (2) the water supply pipe had a small hole near a fitting. Jacobson surmised that

> water had flowed out of the hole in the [p]ipe and into the area below the concrete slab floor. This saturated the below-grade subsurface fill surrounding the [p]ipe and eventually filled the space below the concrete slab floor. Once the water reached the concrete slab floor, it seeped

2

through the floor and foundation walls, and into the [b]uilding. The water damaged various property.[1]

¶4 Secura also retained two engineers to inspect the original pipe and to determine the cause of the pipe's failure. One engineer concluded that the pipe was installed at the same time the building was built in 2003 and that the primary cause of the leak was due to galvanic corrosion[2] between a stainless steel fitting spacer and the pipe. The other engineer concluded that the hole in the pipe was the result of galvanic corrosion caused by the existence of a compression fitting containing a stainless steel fitting spacer, which caused "perforations in the copper pipe."

¶5 Secura determined that its policy did not provide coverage for the water damage to Parent's building based on an exclusion in the policy for damage resulting in "[w]ater under the ground surface pressing on, or flowing or seeping through … [f]oundations, walls, floors or paved surfaces." Secura notified Parent of its conclusion and denied its claim. Subsequently, Parent filed suit in the circuit court alleging breach of contract and bad faith and seeking statutory interest under WIS. STAT. § 628.46 (2021-22).[3] Parent then filed a motion for partial summary judgment on its breach of contract claim. In response, Secura filed a motion for

---

[1] In the circuit court, Parent argued that "the water did not pool under the surface or slowly seep into the building up through the floor. Rather, water that leaked from the pipe traveled along the pipe until the pipe entered the building wherein the water[] entered and flooded the building." Parent does not renew this assertion on appeal, and we will therefore not consider it further.

[2] One of the engineers explained that galvanic corrosion "is an electrochemical cell which can develop when dissimilar metals are in contact under water."

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

declaratory judgment and summary judgment, arguing that the policy did not cover Parent's claimed loss.

¶6    After briefing and oral argument, the circuit court concluded that Secura's policy did not cover Parent's claim.  Therefore, it granted Secura's motion "for summary judgment, and/or for declaratory judgment" and denied Parent's motion for partial summary judgment.  Parent now appeals.

## DISCUSSION

¶7    "We independently review a grant of summary judgment, using the same methodology as the circuit court."  ***Ehr v. West Bend Mut. Ins. Co.***, 2018 WI App 14, ¶7, 380 Wis. 2d 138, 908 N.W.2d 486.  Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  Although the decision to grant a declaratory judgment is generally discretionary, we review that decision de novo where "the exercise of such discretion turns upon a question of law," such as, when a circuit court based its ruling on an "interpretation of an insurance policy."[4]  ***Olson v. Farrar***, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1.

¶8    Insurance policies are contracts, and we interpret them as such. ***Romero v. West Bend Mut. Ins. Co.***, 2016 WI App 59, ¶18, 371 Wis. 2d 478, 885 N.W.2d 591.  That is, "we interpret policy language according to its plain and ordinary meaning as understood by a reasonable person in the position of the

---

[4] The circuit court granted Secura's motion "for summary judgment, and/or for declaratory judgment."  This fact does not influence our analysis on appeal because, as we explained, in this case, the standard of review for both is the same.

insured." ***Hirschhorn v. Auto-Owners Ins. Co.***, 2012 WI 20, ¶22, 338 Wis. 2d 761, 809 N.W.2d 529. If an insurance policy is ambiguous—that is, susceptible to more than one reasonable interpretation—we construe the ambiguity against the insurer. ***Id.***, ¶23.

¶9      Our interpretation of an insurance policy follows three steps:

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain. We analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. *An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies.*

***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65 (emphasis added; citations omitted).

¶10     The policy's "form schedule" provided three relevant provisions: (1) "BUILDING AND PERSONAL PROPERTY COVERAGE FORM" (hereinafter, the "coverage form"); (2) "CAUSES OF LOSS – SPECIAL FORM" (hereinafter, the "causes of loss form"); and (3) "WATER EXCLUSION

ENDORSEMENT" (hereinafter, the "water exclusion endorsement form").[5] The coverage form provides, in part, that Secura "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Both parties agree that Parent's building is a "Covered Property." "Covered Cause of Loss" is defined in the causes of loss form as "Risks Of Direct Physical Loss." Both parties agree that the water damage is a "Covered Cause of Loss." Our focus is therefore on whether any exclusions apply and, if so, whether any exceptions apply to those exclusions.

¶11 The causes of loss form provides, in part:

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

….

**g. Water**

….

2. We will not pay for loss or damage caused by or resulting from any of the following:

….

**d.** **(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or

---

[5] "An endorsement may add to, modify, or supplant the original policy," and "[i]t is generally read along with the policy." *Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶19, 371 Wis. 2d 478, 885 N.W.2d 591. Here, the water exclusion endorsement form expressly modifies the original policy and states that the exclusions within the endorsement replace the "**Water** Exclusion in this Coverage Part or Policy."

any quality in property that causes it to damage or destroy itself;

….

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

….

**G. Definitions**

….

**2.** "Specified cause of loss" means the following: … water damage.

….

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

The water exclusion endorsement form provides, in part:

**A.** The exclusion in paragraph **B**. replaces the **Water** Exclusion in this Coverage Part or Policy.

**B. Water**

….

**4.** Water under the ground surface pressing on, or flowing or seeping through:

**a.** Foundations, walls, floors or paved surfaces;

7

….

> This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

Both parties agree that the water exclusion endorsement form modifies and replaces the B.1.g. "**Water**" exclusion in the causes of loss form.

¶12 According to Parent, the B.2.d. exclusion in the causes of loss form applies and the exception to that exclusion for a "specified cause of loss" (i.e., water damage) therefore also applies. Secura, conversely, cites the language in the cause of loss form B.1. stating that loss or damage caused by the perils listed in B.1. "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Secura asserts that this provision, also known as an "anti-concurrent clause" (ACC), and the water exclusion endorsement form apply, as opposed to the B.2.d. exclusion and exception cited by Parent.

¶13 We agree with Secura for two reasons. First, the ACC and the water exclusion endorsement form, when read together, unambiguously bar coverage for water damage to "[f]oundations, walls, floors or paved surfaces" caused by "[w]ater under the ground surface pressing on, or flowing or seeping through," even if another "cause or event" contributes—in this case, the corroded pipe. Second, the B.2.d. exclusion and exception to that exclusion do not apply to this case because the B.2.d. exception applies to the corrosion exclusion, not to the water exclusion endorsement form. In other words, the exception to the exclusion

for damage caused by "[r]ust or other corrosion" does not apply to the exclusion for water damage to "[f]oundations, walls, floors or paved surfaces."

¶14    We recently construed an insurance policy with identical language to the policy language cited above in a case with facts very similar to those in this case. *See Secura Ins. v. 33 Allenton Venture, LLC*, 2023 WI App 3, ___ Wis. 2d ___, ___ N.W.2d ___ (2022).[6]  In *33 Allenton*, Secura issued insurance policies to the two plaintiffs. *Id.*, ¶2.  Afterwards, a pipe located in the insureds' building "failed," and water damaged the insureds' basement, foundation, floors, and the leased premises and personal property of one of the insureds. *Id.*  The circuit court granted the insureds' motions for summary judgment, "concluding that the policies afford[ed] coverage for the water damage." *Id.*, ¶3.

¶15    On appeal, we reversed and remanded for the circuit court to enter declaratory and summary judgment in favor of Secura.  We concluded the water exclusion endorsement form barred coverage and the policy contained no applicable exception to that exclusion. *Id.*, ¶¶9, 20.  We disagreed with the insureds' argument that the *only* cause of the damage was a pipe breaking. *Id.*, ¶15 n.5.  While it was true that the damage to the insureds would not have occurred if the pipe had not failed, we stated there could be "no dispute that the continued flowing of water through the pipe after it had failed and that water escaping from the pipe into the surrounding subsurface soil also was a cause of the damage." *Id.*  Further, "[h]ad the escaping water not succeeded in penetrating into

---

[6]  After we issued our decision in *Secura Insurance v. 33 Allenton Venture, LLC*, 2023 WI App 3, ___ Wis. 2d ___, ___ N.W.2d ___ (2022), counsel for Secura in this case notified this court of the *33 Allenton* decision.  Parent did not respond to Secura's submission of supplemental authority.

the building, there would have been either no damage or much more limited damage." ***Id.***

¶16 Importantly, the insureds in ***33 Allenton***, like Parent in this case, contended that the water exclusion endorsement form did not bar coverage "because of language in an exception to one of the more than a dozen other exclusions in the policies—the wear and tear exclusion [under the cause of loss form's B.2.d]." ***Id.***, ¶13. The insureds in ***33 Allenton*** also relied on ***Scheidler v American Family Mutual Insurance Co.***, 2003 WI App 159, ¶7, 265 Wis. 2d 872, 667 N.W.2d 367, to argue that the B.2.d. exclusion[7] was "more specific" than the B.1. exclusion and, therefore, should be applied. ***33 Allenton***, 2023 WI App 3, ¶15.

¶17 Relying on the ACC in the causes of loss form's B.1. exclusion, we stated that

> the water exclusion unambiguously bars coverage even if another "cause *or* event … contributes concurrently or in any sequence to the loss"—regardless of whether that other event or cause is covered. Here, "[w]ater under the ground surface pressing on, or flowing or seeping through" foundations, walls, floors, basements, doors, or other openings caused the damage at issue, and thus the water exclusion applies. This is so "regardless" of the fact that water escaping through the broken pipe (relevant to the exception to the wear and tear exclusion)—whether considered a prior "cause" or a prior "event"—also "contribute[d] … to the loss."

***Id.*** (alterations in original). Further, "and importantly, in light of controlling language in our supreme court's ***American Girl*** decision, more specific or not, the

---

[7] The parties agreed that one or more of the exclusions under the cause of loss form's B.2.d. applied to the pipe that failed. *See **33 Allenton***, 2023 WI App 3, ¶13.

exception to the wear and tear exclusion simply does not affect the water exclusion." *33 Allenton*, 2023 WI App 3, ¶16. Specifically, *American Girl* states that "[a]n exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies." *33 Allenton*, 2023 WI App 3, ¶16 (emphasis omitted; quoting *American Girl*, 268 Wis. 2d 16, ¶24). In other words, even if the exception in B.2.d. applied to the wear and tear exclusion, that exception would not have any effect on the water exclusion endorsement form because the latter is a separate exclusion for water damage. *See id.*

¶18 The insureds in *33 Allenton* also argued that the water exclusion endorsement form applied only "to damage caused by water that originates from causes outside the Covered Premises." *Id.*, ¶10. We rejected this argument, concluding that the water exclusion endorsement form does not state that the exclusion is limited to water from outside the Covered Premises. *Id.*, ¶11. Further, the water exclusion endorsement form excludes coverage for damage caused by water that emanates from on-site equipment, such as sump pumps, and we therefore could not conclude that the exclusion applied only to water emanating from outside the Covered Premises. *Id.* Additionally, the water exclusion endorsement form stated that "[t]his exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is *otherwise caused*." *Id.*, ¶8. We emphasized that the water damage to the insureds' property was "otherwise caused" by "the continuing flow of water after a pipe under the building failed." *Id.*, ¶12.

¶19 Parent raises many of the same arguments as the insureds did in *33 Allenton*. For example, Parent argues that the water exclusion endorsement form applies only to water coming from outside of the insured building and that

the corrosion exclusion and its exception apply because those provisions are "more specific" than the water exclusion endorsement form. Like the building damage in *33 Allenton*, the damage to Parent's building was caused, at least in part, by water as described in the water exclusion endorsement form. Under the policy's ACC, coverage is excluded for water damage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."[8] The "other cause or event" in this case is the corroded pipe. Even without the ACC, and following *American Girl*, the exception to the corrosion exclusion would apply only to the corrosion exclusion—not to the water exclusion endorsement form. We decline to follow Parent's arguments for the same reasons that we rejected those same arguments in *33 Allenton*.

¶20    Parent advances two additional theories as to why the ACC and the water exclusion endorsement form should not apply. First, Parent argues that Secura denied coverage based on both the water exclusion endorsement form and the corrosion exclusion. This fact, however, does not change our analysis because we interpret an insurance policy by looking at the policy, not based upon what an insurance claims adjuster communicated to an insured. *See American Girl*, 268 Wis. 2d 16, ¶24.

¶21    Second, Parent contends that the "cause theory" applies to this case, which, according to Parent, is "the prevailing method used to determine whether a

---

[8] Parent argues that the ACC does not apply to the water exclusion endorsement form because the latter "does not incorporate by reference or otherwise adopt the ACC provision that precedes the B.1.g. water exclusion." We disagree and conclude that the ACC applies to the water exclusion endorsement form because the water exclusion endorsement form specifically states that it replaces the B.1.g. water exclusion, and the ACC unambiguously applies to the B.1.g. water exclusion. *See 33 Allenton*, 2023 WI App 3, ¶8 n.4.

single occurrence or multiple occurrences took place for purposes of insurance coverage." Parent argues that the cause theory dictates that we apply the corrosion exclusion and the water damage exception because, under that theory, "there was a single loss caused by corrosion."

¶22 Under the cause theory,

"where a single, uninterrupted cause results in all of the injuries and damage, there is but one 'accident' or 'occurrence.'" If "cause and result are 'so simultaneous or so closely linked in time and space as to be considered by the average person as one event,'" then only a single occurrence has taken place. "If, however, that cause is interrupted or replaced by another cause the chain of causation is broken and more than one accident or occurrence has taken place."

*SECURA Ins. v. Lyme St. Croix Forest Co.*, 2018 WI 103, ¶21, 384 Wis. 2d 282, 918 N.W.2d 885 (citations omitted). According to Parent, "[t]he corrosion of the water main directly resulted in water leaking out and damaging Parent's property. There were not two, independent causes of loss as Secura suggests but a single, unbroken chain of events leading to a loss." Relatedly, Parent applies the cause theory via "the longstanding Independent Concurrent Cause [ICC] Rule." In other words, Parent contends that "[c]onsistent with the Cause Theory … there is a single loss or occurrence—such that the ICC [Rule] does not apply—where the second action or loss only occurs *but for* an initial loss or occurrence."

¶23 We conclude that we need not address Parent's cause theory argument because Parent forfeited any such argument by not raising it before the

circuit court.[9] *See State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633. Furthermore, even if the ICC Rule was at issue, we agree with Secura that "coverage would be barred even if a concurrent cause was relevant." Under the ICC Rule, "where there are multiple causes for a loss, some of which are insured and others of which are excluded, the insured risk prevails over the excluded risk." *American Fam. Ins. Co. v. Schmitz*, 2010 WI App 157, ¶24, 330 Wis. 2d 263, 793 N.W.2d 111. We have previously determined, however, that if a policy's ACC applies, the ACC will remain enforceable over the ICC Rule. *See Hughes v. Allstate Indem. Co.*, No. 2019AP1234, unpublished slip op. ¶24 (WI App Nov. 21, 2019).[10]

¶24　For the reasons stated, we conclude that Secura's policy does not cover Parent's claimed damage because the policy excludes coverage for water damage to "[f]oundations, walls, floors or paved surfaces," even if another "cause or event" contributes to that damage, and because the exception to the corrosion exclusion does not apply to the water exclusion endorsement form.

*By the Court.*—Order affirmed.

---

[9] Parent, in its reply brief, argues for the first time that the policy is ambiguous. From our review of the record, it does not appear that Parent raised this argument before the circuit court, and we therefore, deem it forfeited. *See State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633. To the extent that Parent did raise an ambiguity argument in the circuit court, we generally will not address arguments made for the first time in a reply brief, and we refuse to do so here. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). In any event, we previously concluded that identical policy provisions were unambiguous. *See 33 Allenton*, 2023 WI App 3, ¶19. Furthermore, Parent contends that Secura's interpretation of the policy would produce an "absurd result." *See Schinner v. Gundrum*, 2013 WI 71, ¶91, 349 Wis. 2d 529, 833 N.W.2d 685. Again, this argument was not raised before the circuit court, and we deem it forfeited.

[10] Unpublished opinions authored by a by a single judge under WIS. STAT. § 752.31(2) and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.