COURT OF APPEALS
DECISION
DATED AND FILED

June 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP257**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CV1544**

**IN COURT OF APPEALS
DISTRICT II**

---

CHRIS HINRICHS AND AUTOVATION LIMITED,

    PLAINTIFFS-APPELLANTS,

 V.

DOW CHEMICAL COMPANY D/B/A DOW AUTOMOTIVE,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Waukesha County: PAUL BUGENHAGEN, JR., Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Chris Hinrichs and Autovation Limited[1] (collectively, Hinrichs) appeal the circuit court's order granting summary judgment to DOW Chemical Co. (Dow) and dismissing his claim on the merits, and with prejudice.  For the following reasons, we affirm.

## BACKGROUND

¶2     The facts pertinent to our analysis follow.  Hinrichs developed and sold a product called JeeTops, translucent acrylic panels that his company installs as aftermarket skylights into the roofs of certain Jeep vehicles.  Hinrichs uses an adhesive to secure the acrylic into holes cut into Jeep hard tops, and from September 2012 to July 2014, Hinrichs purchased Dow primers and adhesives for this purpose.  Hinrichs asserts that the acrylic developed cracks and crazes, causing water leakage, where they were exposed to the Dow products.  When Hinrichs observed the cracks and crazes, he reported this to Dow and sent the company two acrylic samples for testing.

¶3     In August 2013, Dow advised Hinrichs by email that it would submit the samples of the acrylic to its labs.  Dow confirmed it would test the acrylic with its new primer product 5504G (G primer) to see if it properly bonded in place of the primer Hinrichs had been using, the 5404A primer (A primer).  With respect to the cracks and crazes, Dow stated:

> While Dow … does not typically see compatibility issues with this adhesive/primer with acrylics, Dow cannot certify or attest to the long term performance or stability of any substrate.  The long term compatibility of a substrate can only be addressed by the user or the manufacturer of the substrate.

---

[1] Hinrichs is the sole shareholder of Autovation Limited.

¶4     To help Hinrichs address his suspicion that the adhesive system he was using was at fault, Dow attached to the email the Technical Data Sheets and Material Safety Data Sheets for the A primer and the 17042/Express adhesive (Express adhesive), stating, "[t]hese will be helpful if you wish to ask your acrylic supplier for evaluation of their product when used with these adhesives/primers."[2] Dow also advised Hinrichs to inquire with the acrylic manufacturer about the possibility that the Express adhesive was causing stresses through thermal movement.  It further advised:

> Your supposition and interpretations of this are the critical ones, and likely the most accurate.  If you believe there is a plausible likelihood this cracking is caused by the adhesive system, we understand if you discontinue its use.  It is what we would expect and we also believe would be the best course.  Of course, you may return your current adhesive inventory and we will issue credit[.]

¶5     In September 2013, Hinrichs's contact at Dow emailed Dow's research and development department, asking it to "review the acrylic sample" he was sending over, which was a cracked sample bonded with the A primer and Express adhesive.  The email stated, "the customer insisted th[at] Dow review this crack to see if there was any indication our adhesives or primers were the cause. … I told him he needs to have this reviewed by the acrylic manufacturer to determine the cause."

¶6     On October 22, 2013, Dow sent an email to Hinrichs to which it attached a report of its adhesion testing of the new G primer and the Express

---

[2] Dow also offered to test the acrylic with an application of the A primer and the Express adhesive, and then expose it "to environmental testing to see if the acrylic changes in visual appearance."  However, the Record does not evidence a report of any test of the A primer and the Express adhesive on the acrylic.

adhesive on the acrylic. In the same email, Dow told Hinrichs it "reviewed the crack in the impact modified acrylic, and based on the visual review, [it] cannot determine an explanation or a cause of the crack." It cautioned Hinrichs that Dow's expertise is "sealants and adhesives, and the best source of information for these instances is typically the manufacturer of the product." Dow also wrote:

> Regarding the use of the primer on the impact modified acrylic as the attached test reports [sic] states, in all of the adhesion testing with any of the primers for both initial and through humidity; [sic] no evidence of any crazing or surface cracking was observed.[3]

¶7 Thereafter, Hinrichs continued purchasing and using the same Dow adhesive system to install JeeTops, and his customers continued to observe cracking and crazing of the acrylic.

¶8 Hinrichs brought suit against Dow based on claims of negligent misrepresentation, intentional misrepresentation, strict responsibility misrepresentation, and violation of WIS. STAT. § 100.18 (2023-24),[4] the Wisconsin Deceptive Trade Practices Act. The circuit court dismissed the action after finding that the economic loss doctrine barred the misrepresentation claims, and that the statutory claim was not viable because Hinrichs was not a member of "the public"

---

[3] To reiterate, there is no report in the Record indicating that the acrylic was tested with the A primer. To the extent that the phrase "in all of the adhesion testing with any of the primers" related to a test of the acrylic with the A primer, Dow stated, "no evidence of any crazing or surface cracking was observed[,]" and in the October 22, 2013 email, it expressed it was not the "best source for information" regarding the long-term performance of its products on the acrylic used by JeeTops, and advised Hinrichs to consult with the acrylic manufacturer. Thus, Dow reiterated what it had already represented to Hinrichs in the August 2013 email that "Dow cannot certify or attest to the long term performance or stability of any substrate. The long term compatibility of a substrate can only be addressed by the user or the manufacturer of the substrate."

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

for purposes of the statute and had failed to allege that Dow made representations that were untrue, deceptive, or misleading.

¶9      On appeal, this court affirmed the circuit court's dismissal of Hinrichs's common law misrepresentation claims and reversed the court's dismissal of Hinrichs's statutory claim. *Hinrichs v. Dow Chem. Co.*, No. 2017AP2361, unpublished slip op., ¶¶14-17, 22, 24 (WI App. Feb. 6, 2019). Specifically, we concluded that the complaint sufficiently alleged that Dow made representations that were untrue, deceptive, or misleading, and that "dismissal of the WIS. STAT. § 100.18 claim based upon the failure to meet 'the public' component of the first element was improper. The issue requires further exploration through the discovery process." *Id.*, ¶¶22-23.

¶10     The parties cross-appealed, and our supreme court affirmed this court's decision. *Hinrichs v. Dow Chem. Co.*, 2020 WI 2, ¶¶2, 92, 389 Wis. 2d 669, 937 N.W.2d 37. It held that as a matter of first impression, the statutory heightened pleading standard for fraud claims does not apply to claims made under WIS. STAT. § 100.18, and it further held that Hinrichs stated a claim under that statute's prohibition against fraudulent misrepresentations. *Hinrichs*, 389 Wis. 2d 669, ¶91.

¶11     On remand, Dow moved for summary judgment. While Dow's summary judgment motion outlined five arguments that supported its motion, the circuit court only reached the issue of whether Hinrichs was a member of the public for purposes of the statute. It did not reach the alternative arguments, including the argument that the statute of repose time-barred Hinrichs's claim. The court held that the parties' extensive ongoing business relationship meant that they were in a "particular relationship" such that Hinrichs did not have a viable

5

claim under WIS. STAT. § 100.18.[5] *See **Kailin v. Armstrong***, 2002 WI App 70, ¶44, 252 Wis. 2d 676, 643 N.W.2d 132 (concluding that plaintiffs "were no longer 'the public' under [sec. 100.18] because they had a particular relationship with" the defendant). Thus, the court granted summary judgment to Dow and dismissed Hinrichs's statutory claim. Hinrichs appeals.

## DISCUSSION

¶12 We review de novo a circuit court's grant of summary judgment. ***Behrendt v. Gulf Underwriters Ins. Co.***, 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568. "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." ***Secura Ins. v. 33 Allenton Venture, L.L.C.***, 2023 WI App 3, ¶4, 405 Wis. 2d 700, 985 N.W.2d 109 (quoting ***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65).

---

[5] The relevant portion of the statute states:

> No … corporation … with intent to sell … any … merchandise … to the public … or with intent to induce the public … to enter into any contract or obligation relating to the purchase … of any … merchandise … shall make … or place before the public, or cause … to be made … or placed before the public, in this state … an advertisement, … statement or representation of any kind to the public relating to such purchase … which advertisement, … statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

WIS. STAT. § 100.18(1).

¶13    On appeal, Hinrichs asserts that he is a member of the public for purposes of WIS. STAT. § 100.18.[6]    However, we do not resolve the issue of whether Hinrichs is a member of the public for purposes of the statute.  Rather, we conclude that as a matter of law, the Record shows that Hinrichs's claim is time-barred by the statute of repose.  *See* § 100.18(11)(b)3.  A plaintiff must bring a § 100.18 claim within three years of the misrepresentation, regardless of when the plaintiff discovers the resulting injury.    Sec. 100.18(11)(b)3.; ***Kain v. Bluemound E. Indus. Park, Inc.***, 2001 WI App 230, ¶¶14-16, 248 Wis. 2d 172, 635 N.W.2d 640.  Based on the Record, Hinrichs did not bring suit within this time frame.

¶14    The Record shows that Hinrichs first purchased Dow products in September 2012, when he first ordered the A primer.[7]    When asked during his deposition about testing of the A primer, Dow's counsel and Hinrichs had this exchange:

> [Counsel:] [S]o you're telling me …
>
> ….
>
> … that the testing related to the [A] primer was all conducted before September 2012, correct?
>
> [Hinrichs:] It would have had to been if they were selling it to me because that was -- they set the pace. …

---

[6] A claim under WIS. STAT. § 100.18 has three elements: (1) "the defendant made a representation to 'the public'" "with the intent to induce an obligation"; (2) "the representation was untrue, deceptive or misleading"; and (3) the representation caused a pecuniary loss. ***K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.***, 2007 WI 70, ¶19, 301 Wis. 2d 109, 732 N.W.2d 792.  There is another requirement under the statute: the claim must be brought within three years of the misrepresentation.  Sec. 100.18(11)(b)3.

[7] Hinrichs purchased Dow products through Duncan Systems Inc.

> They told me they would not sell me anything unless it was tested.

¶15 Thus, Hinrichs himself conceded that any representation Dow made to Hinrichs to induce him to purchase the A primer occurred prior to or during September 2012, before he purchased the product. Hinrichs brought suit against Dow alleging a violation of WIS. STAT. § 100.18 on August 22, 2016, which is outside the statute of repose's three-year time frame from the date of the alleged misrepresentation.[8]

¶16 Yet, Hinrichs argues that his action was timely filed, relying on *Hackel v. National Feeds, Inc.*, 986 F. Supp. 2d 963, 980 (W.D. Wis. Dec. 9, 2013). *Hackel*'s fact pattern complemented that court's finding that the parties did not have a contractual relationship such that the plaintiff had no obligation to purchase products from the defendant.[9] *Id.* In support of his timeliness argument, Hinrichs compares his purchase history of the Dow products to the purchase history in *Hackel*: he counts 26 separate purchases, arguing that each of those purchases was a separate event, arguing, "[a]fter making a purchase,

---

[8] Hinrichs's statutory claim is based on what he alleges are intentional "untrue, deceptive[,] or misleading" representations in the email and attached report Dow sent to him on October 22, 2013. Statements made in the October 22 Dow email and the attached report, relate to their new product, the G primer, which Hinrichs did not ever purchase. The Record shows that Hinrichs purchased only the A primer during the time period in which he used Dow products on the JeeTops, and that he did not ever purchase the G primer. After receiving the October 22 email, Hinrichs continued to purchase the same Dow products as he had been, the A primer and Express adhesive. Therefore, he did not rely on the October 22, 2013 email and report because he did not purchase the subject of that report, the G primer.

[9] This was significant because the alleged misrepresentation in *Hackel* occurred in between plaintiff's uses of the product. After defendant had discovered a defect to the product in question, the defendant's representative told the plaintiff there was "nothing to really get alarmed about[,]" after which plaintiff continued to use the product. *Hackel v. National Feeds, Inc.*, 986 F. Supp. 2d 963, 971, 980 (W.D. Wis. Dec. 9, 2013).

there was no contract or obligation to make any further purchases." Hinrichs's emphasis on this purchase pattern does not salvage his claim because it does not change the date of the alleged misrepresentation upon which he relied when he first purchased the product. Even conceding that what he says is true, that each of the purchases was a separate event, the purchases were for A primer, which is a product he first purchased in September 2012, and for which, by his own concession, any representation was made to Hinrichs prior to or during September 2012, before his first purchase of the product. Hinrichs did not file suit until August 2016, well after the three-year statute of repose. Thus, we conclude his claim is time-barred.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.