HOLSEN and another, Respondents, v. MARSHALL & ILSLEY BANK, Trustee of the Frank H. Bercker Studios, Ltd. Employees' Profit Sharing & Retirement Plan, Appellant.

*No. 175. Argued September 8, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 189.)

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland*, attorneys, and *Martin R. Browning, George B. Sletteland*, and *James D. Wing* of counsel, all of Milwaukee, and oral argument by *Mr. Sletteland*.

For the respondents there was a brief by *Cahill, Fox & Smith*, attorneys, and *John D. Cahill, William F. Fox*, and *Thomas E. Aul* of counsel, and oral argument by *Bruce C. O'Neill*, all of Milwaukee.

ROBERT W. HANSEN, J.  The basic question before the trial court involved the 1958 amendment to the Frank H. Bercker Studios, Ltd. employees' profit sharing and retirement plan providing that a participating employee who "intends to engage directly or indirectly" in a competitive business shall receive only 50 percent of his vested participating interest in the plan at the severance date. The trial court held that this amendment was violative on its face of sec. 103.465, Stats., which provides:

"A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

The basic question on this appeal remains whether the 1958 amendment to the 1952 pension plan is subject to sec. 103.465, Stats., and, if so, whether it meets the requirements as to reasonableness set forth in the statute.

The profit sharing and retirement plan here involved constituted a contract between the employer and plaintiff employees. The trial court so held. The defendant, in its reply brief, so concedes. Earlier decisions of this court so establish.[1] Entirely apart from the statute (sec. 103.465), contracts not to compete after a term of employment can be held unenforceable for reasons of public policy or for creating an undue hardship upon the employee.[2] However, if the 1958 amendment is violative of sec. 103.465, and, if the statute is applicable, that is enough here for affirmance. So we need not discuss the general "rule of reason" test,[3] nor discuss cases from other jurisdictions dealing with restrictive covenants as to future employment.[4] In this case we begin and, on these facts, end with considering the applicability and application of sec. 103.465.

*Applicability of statute.*

On the issue of the applicability of sec. 103.465, Stats., to the 1958 amendment to employees' pension plan, we

[1] *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769; *Voigt v. South Side Laundry & Dry Cleaners* (1964), 24 Wis. 2d 114, 128 N. W. 2d 411.

[2] *Lakeside Oil Co. v. Slutsky* (1959), 8 Wis. 2d 157, 161, 98 N. W. 2d 415.

[3] *Id.* at page 162, stating: ". . . However phrased, the rule requires that a restrictive covenant not to compete after a term of employment should be reasonably necessary for the protection of the legitimate interests of the employer and at the same time should not be oppressive and harsh on the employee or injurious to the interests of the general public. This is the rule in Wisconsin. . . ."

[4] *Id.* at page 162, stating: "Contracts not to compete after a term of employment have been the subject matter of much litigation in the United States. There is a multitude of cases collected in the various textbooks, and especially enlightening annotations are to be found in 9 A. L. R. 1456, 20 A. L. R. 861, 29 A. L. R. 1331, 52 A. L. R. 1362, and 41 A. L. R. (2d) 15."

find *Union Central Life Ins. Co. v. Balistrieri*,[5] decided in 1963, strongly persuasive, if not completely controlling. There, as here, the employer was seeking to restrain the employee's activities. There, the court found, ". . . the second paragraph of the instrument signed by the employee in consideration of receiving the advance imposes a penalty (liability for debt) if, and only if, the employee writes life insurance anywhere in the entire national area in which the employer is licensed to operate." [6] Here the employer, given the basis for finding intent to compete, could withhold 50 percent of the profit sharing and retirement benefits the employee would otherwise receive. Here, as in *Balistrieri*, "Although the agreement is not expressed as a restriction against competition by the employee, its undoubted object and effect is that of a powerful deterrent to the employee's exercise of the right to compete, particularly where, as here, the penalty involved is a substantial sum of money." [7] In *Balistrieri*, this court concluded, "We consider sec. 103.465, Stats., applicable." [8]

Here, as in *Balistrieri*, it is substance, not form, that controls. Defendant argues that employees were only required not to terminate their employment with the intent to engage in a competing business. This would have us view the 1958 amendment as solely being an attempt to limit payment of full benefits to employees who did not engage or form an intent to engage in competitive activities during the course of their employment. The actions of the company, as well as the language of the amendment, compel the conclusion that the employer's primary concern was with limiting competition by former employees after termination of their

---

[5] (1963), 19 Wis. 2d 265, 120 N. W. 2d 126.
[6] *Id.* at page 270.
[7] *Id.* at page 270.
[8] *Id.* at page 270.

employment. It was not until six months after competition had begun that the company acted to limit pension benefits. Exhibit I, the committee's accounting of the benefits due the plaintiffs shows an entry: "Less: 50% by reason of engaging in competition." Even without such corroboration of primary concern with the fact of competition, rather than with intent to compete, it would be difficult to dispute the trial court's finding: "By the October amendment, the employer imposed a restraint upon the plaintiffs not to compete with him upon pain of losing fifty per cent (50%) of their vested participating interest . . . ."

The amendment permits limiting of benefits if a "participating employee intends" to enter into competition, but this language does not limit imposition of the sanction to cases where the intent was formed before termination of employment. The phrase "participating employee" is convenient shorthand for referring to those employees who have a vested interest in the profit sharing and retirement plan. At least it is so used in sec. 6(c) of the plan, stating: ". . . Upon such retirement, such participating employee shall become entitled to have his participating interest applied for such employee's benefit . . . ." There is no suggestion that "upon such retirement" the employee entitled to benefits was no longer a "participating employee." The exact reverse is clearly implied. The "participating" referred to is participating in the plan during the period of employment and upon retirement. Conditions precedent are not favored in this type of contract,[9] and, additionally, pension trusts are to be liberally construed in favor of employees.[10] The trial court, as we see it, was entirely correct in holding that the profit sharing and retirement

[9] 17 Am. Jur. 2d, *Contracts,* p. 752, sec. 321.

[10] *Voigt v. South Side Laundry & Dry Cleaners, supra,* at page 118.

plan of the employer was a contract to which sec. 103.465, Stats., is applicable.

*Application of statute.*

It follows that in Wisconsin a provision in an employer's profit sharing and retirement plan that calls for forfeiture of benefits by employees who engage in competitive enterprises is valid and enforceable only if it meets the requirements of sec. 103.465, Stats. The trial court found that the 1958 amendment to the 1952 plan did not meet such requirements. Such finding is required by the very wording of the 1958 amendment. The provision for partial forfeiture of benefits contains no limitation as to time or area. Both are clearly required by the statute. The statutory reference to covenants not to compete "within a specified territory and during a specified time" being lawful and enforceable only if the "restrictions imposed are reasonably necessary for the protection of the employer" does more than describe a category of covenants. In an earlier case, this court said of this statute: ". . . the section only requires the restrictions as to time and place to be reasonably necessary for the protection of the employer." [11] This is correct enough and it follows that an entire absence of limitations as to time and place is fatal to a claim of being within the statutory sanction. Here the place or area is as wide as the world and the time as long as eternity. The employer argues that the committee given authority to apply the forfeiture would be reasonable in its application of so obviously unreasonable a restraint. That does not satisfy the statute. In the words of the statute, "[a]ny such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant

---

[11] *Lakeside Oil Co. v. Slutsky, supra,* at page 162.

*or performance* as would be a reasonable restraint."
(Emphasis supplied.)

*Amounts due plaintiffs.*

Like the caboose on a freight train, there remains the issue raised by appellant concerning the exact amount of money due each plaintiff if the forfeiture of benefits provision is, as it has been, invalidated. Judgment was entered for the full amount claimed, plus interest. However, in the agreed statement of facts, it was stipulated that one half of the plaintiffs' interest in the retirement plan was awarded to them by the committee and that: "These sums plus earned interest were paid to plaintiffs." Defendant brought proceedings to modify the judgment in the trial court, pursuant to sec. 269.46, Stats., within the three-month time limit imposed by sec. 274.01 (1). The appeal to this court divested the trial court of jurisdiction to conclude the hearing on such motion, but we hold that the right to raise the issue on appeal was not thereby lost. If the fact is that $4,332.82 with interest was paid to plaintiff Earl J. Holsen and $7,360.59 with interest was paid to plaintiff Roy M. Mueller and accepted by them, defendant is entitled to credit or partial satisfaction of the judgment in such amounts. If the reference in the stipulation to amounts "paid" means only that the one-half payment was tendered but not accepted, no credit or partial payment is involved, and defendant is required to pay the full amount as set forth in the judgment. Rather than reverse and remand for further proceedings to resolve this puzzling disparity between stipulation and judgment, we modify the judgment to add: ". . . with the defendant entitled to credit as a payment on this judgment for any amounts of money paid by it to the plaintiffs and accepted by the plaintiffs as partial payment of the vested interest of the plaintiffs in the profit sharing and

retirement plan." Such modification is a shortcut to insuring that each of the plaintiffs receives exactly what he would have received from the retirement plan upon termination of employment if there had been no sec. 6(c). Under this decision, each is entitled to no less—and no more—than that.

*By the Court.*—Judgment modified, and, as modified, affirmed.