**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 27, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP2425**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV360

**IN COURT OF APPEALS
DISTRICT II**

BURT J. STEFFES,

 PLAINTIFF-APPELLANT,

 V.

FOND DU LAC REGIONAL CLINIC, S.C. AND FOND DU LAC REGIONAL CLINIC, S.C. RETIREMENT PLAN C/O KATE M. COLE, PLAN ADMINISTRATOR,

 DEFENDANTS-RESPONDENTS.

 APPEAL from an order of the circuit court for Fond du Lac County: TRICIA L. WALKER, Judge. *Reversed and cause remanded.*

 Before Neubauer, P.J., Gundrum, and Grogan, JJ.

 ¶1 GUNDRUM, J. Dermatologist Burt J. Steffes appeals from an order of the circuit court denying him summary judgment and granting summary judgment to Fond du Lac Regional Clinic, S.C. (Clinic) and Fond du Lac Regional

Clinic, S.C. Retirement Plan c/o Kate M. Cole, Plan Administrator (Retirement Plan or Plan). He asserts the court erred in concluding that the restrictive covenant of the supplemental Retirement Plan he entered into with the Clinic is enforceable and that Cole, as the Plan's administrator, properly refused his claim for benefits under the Plan. Because we conclude the court erred, we reverse and remand.

## BACKGROUND

¶2 Steffes began working as an associate dermatologist for the Clinic in 2009, and in 2011, he became a shareholder-employee. To move to this latter status, Steffes was required to sign a shareholder-employee employment contract that included a "covenant not to compete" provision prohibiting Steffes from competing with the Clinic by practicing in his medical specialty within two years after termination from the Clinic and within ten miles of any location at which he practiced for the Clinic. Also in 2011, Steffes was offered the opportunity to participate in the Clinic's supplemental Retirement Plan, and he agreed to participate, signing the necessary plan participation agreement.

¶3 In 2017, an amended version of the Retirement Plan went into effect, which afforded Clinic shareholders like Steffes "the opportunity to receive supplemental executive retirement benefits," in order to increase their incentive to remain with the Clinic and make it more profitable. With this amended version, the Plan provides that "a Participant will be 50% vested after 5 Years of Service with an additional 10% vested each additional Year of Service until 100% is vested after 10 Years of Service." The Plan also provides that

> [i]f a Participant Separates from Service with the Company prior to attaining age 65, and *within two years* is *in*

*Competition with* the Company[1] or Agnesian HealthCare, Inc., *his or her unvested and Vested Retirement Plan Account balance shall be forfeited in full.* Notwithstanding the foregoing, the Administrator may elect to waive the 2-year non-compete vesting provision for any Participant, subject to the provisions of Section 409A of the Code.

(Emphases added.) The Plan defines "Competition with the Company" as

1. Directly or indirectly establishing a medical practice or engaging in the practice of medicine in competition with Agnesian Healthcare, Inc.[2] or any affiliate either (i) within the Wisconsin Counties of Winnebago, Calumet, Sheboygan, Washington, Dodge, Fond Du Lac, Green Lake, Manitowoc, Outagamie or (ii) as a direct or indirect employee or a contractor with any of the following organizations:

a. Aurora Medical Group, including any of its affiliates and/or successors.

2. Without the Company's prior written consent, employment by Agnesian or any of its affiliates shall constitute Competition with the Company.

¶4 During his deposition testimony, Steven Little, the former president and chief executive officer (CEO) of Agnesian Healthcare and chief operating officer (COO) of SSM Health's Wisconsin region, admitted the restrictive covenant in the Retirement Plan was "very broad" but explained that it was designed that way in order to: (1) "prohibit physicians from leaving and competing with us" and (2) offset the generous compensation provided and allow Agnesian "to recruit and retain physicians more effectively and give us a competitive advantage," specifically as to its "single-largest competitor, that being Aurora Health Care."

---

[1] The Plan defines the "Company" as the Clinic. Agnesian Healthcare, Inc. had a professional services agreement with the Clinic.

[2] As of January 1, 2018, Agnesian Healthcare, Inc. became SSM Health.

3

¶5      On October 26, 2018, when he was 90% vested in the Retirement Plan, Steffes resigned from his employment with the Clinic.  Shortly thereafter, he opened Dermatology and Cosmetic Physicians, S.C. (DCP) outside of the 10-mile geographic restriction in the employment contract's restrictive covenant but in Washington County, which was one of the counties restricted by the Plan's covenant.  He requested that the Plan waive its restrictive covenant, but it declined to do so.  Steffes subsequently submitted a claim for benefits under the Retirement Plan, but Cole denied his request on the basis that he had engaged in competition with Agnesian Healthcare in violation of the Plan, due to practicing medicine in Washington County.  Steffes appealed, but the denial was upheld.

¶6      Steffes filed suit against the Clinic and the Retirement Plan alleging they breached the Plan by wrongfully denying his claim for benefits, failing to act in good faith, failing to comply with applicable law, and failing to timely pay the benefits.  He also sought a declaratory ruling that the Plan's restrictive covenant was invalid and unenforceable under WIS. STAT. § 103.465 (2023-24).[3]  Both sides moved for summary judgment.  The circuit court granted the Clinic and the Plan's motion and denied Steffes', concluding that § 103.465 did not apply to the Plan's restrictive covenant, the covenant was enforceable under the "rule of reason,"[4] and Steffes violated the covenant's restrictions.

---

[3]  All references to the Wisconsin Statutes are to the 2023-24 version.

[4]  Under the common law,

> restrictive covenants were subject only to a "rule of reason" requiring "that a restrictive covenant not to compete after a term of employment should be reasonably necessary for the protection of the legitimate interests of the employer and at the same time should not be oppressive and harsh on the employee or injurious to the interests of the general public."

(continued)

4

¶7     Steffes appeals.

## DISCUSSION

¶8     We review de novo a circuit court's grant of summary judgment. ***Behrendt v. Gulf Underwriters Ins. Co.***, 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568.  "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law."  ***Secura Ins. v. 33 Allenton Venture, L.L.C.***, 2023 WI App 3, ¶4, 405 Wis. 2d 700, 985 N.W.2d 109 (2022) (quoting ***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65).

¶9     With regard to restrictive covenants, our supreme court has stated:

> In Wisconsin, covenants not to compete are regarded with suspicion by the courts because the law seeks to "encourage[] the mobility of workers." … Consistent with encouraging the free movement of employees, we have applied the following canons of construction to covenants not to compete: (1) such covenants are prima facie suspect; (2) they must withstand close scrutiny to pass legal muster as being reasonable; (3) they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and (4) they are to be construed in favor of the employee.

***Farm Credit Servs. of N. Cent. Wis., ACA v. Wysocki***, 2001 WI 51, ¶9, 243 Wis. 2d 305, 627 N.W.2d 444 (citations omitted).  "These canons are grounded in WIS. STAT. § 103.465," ***Wysocki***, 243 Wis. 2d 305, ¶10, which provides:

> **Restrictive covenants in employment contracts**. A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the

---

***Selmer Co. v. Rinn***, 2010 WI App 106, ¶19, 328 Wis. 2d 263, 789 N.W.2d 621 (quoting ***Lakeside Oil Co. v. Slutsky***, 8 Wis. 2d 157, 162, 98 N.W.2d 415 (1959)).

> employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Sec. 103.465.

¶10 Steffes argues in his brief-in-chief that if WIS. STAT. § 103.465 applies in this case, the covenant "is illegal, void and unenforceable" in its entirety. In their response brief, the Clinic and the Plan develop no argument disputing that the covenant is void if § 103.465 applies. Instead, they argue only that "[t]he common law rule of reason—not … § 103.465—applies to the Plan's non-compete provision" and the restrictive covenant is valid and enforceable "under the common law rule of reason." Because the Clinic and the Plan do not dispute that the restrictive covenant is void if § 103.465 applies, if we conclude that it applies, as we do, our analysis ends. *See State v. Verhagen*, 2013 WI App 16, ¶38, 346 Wis. 2d 196, 827 N.W.2d 891 (stating that unrefuted arguments are deemed conceded).

¶11 "Whether a statute applies to a particular fact situation is a question of law that this court reviews *de novo*." *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶19, 234 Wis. 2d 670, 610 N.W.2d 832. By its plain terms, WIS. STAT. § 103.465 applies.

¶12 No one disputes that the restrictive covenant constitutes "[a] covenant by an assistant, servant or agent [Steffes] not to compete with his … employer or principal [the Clinic] … after the termination of that employment or agency [on October 26, 2018]." *See* WIS. STAT. § 103.465. Indeed, the Clinic

readily and repeatedly refers to the relevant Plan provision as Steffes' "noncompete." The covenant also is clear that it prevents Steffes from competing "within a specified territory," *see id.*, that being "within the Wisconsin Counties of Winnebago, Calumet, Sheboygan, Washington, Dodge, Fond du Lac, Green Lake, Manitowoc or Outagamie." And, the covenant unmistakably prevents competition by Steffes "during a specified time," *see id.*, which is "within two years" of Steffes "[s]eparat[ing] from [s]ervice with the Company prior to attaining age 65." Because the covenant squarely falls within the plain terms of § 103.465, this statute applies, and the covenant is therefore "lawful and enforceable *only if* the restrictions imposed are reasonably necessary for the protection" of the Clinic. But, again, the Clinic does not refute Steffes' developed argument in his brief-in-chief that the restrictive covenant is invalid and unenforceable under the statute.

¶13 Our conclusion that WIS. STAT. § 103.465 applies is consistent with relevant precedent. In ***Union Central Life Insurance Co. v. Balistrieri***, 19 Wis. 2d 265, 120 N.W.2d 126 (1963), our supreme court considered a restrictive covenant in which a life insurance salesman agreed to owe and pay a debt to Union Central on advances he received from the company if within two years after leaving its employ, he wrote life insurance in any territory in which Union Central was licensed to operate. ***Id.*** at 268-69. The court observed that the agreement served as "a powerful deterrent to the employe's exercise of the right to compete." ***Id.*** at 270. The court concluded that § 103.465—the language of which was identical in all relevant respects to the statute's current language—applied, and most important to the present case, in so concluding, it plainly stated:

> [R]eading the statute itself we see that a covenant between an employer and an employe that the latter will not compete with the employer during or after the term of employment during a specified time and within a specified area is valid only if the restrictions imposed are reasonably

> necessary for the protection of the employer: otherwise the entire restrictive covenant is void.

*Balistrieri*, 19 Wis. 2d at 269-70. In other words, the *Balistrieri* court held that the statute means what it says—that § 103.465 will apply to a restrictive covenant if it prohibits an employee from competing "during or after the term of employment during a specified time and within a specified area." *See Balistrieri*, 19 Wis. 2d at 269-70.

¶14 A few years later, in *Holsen v. Marshall & Ilsley Bank*, 52 Wis. 2d 281, 283, 190 N.W.2d 189 (1971), our supreme court considered whether an amendment to a company's profit sharing and retirement plan was subject to WIS. STAT. § 103.465. As the court phrased it, the amendment "provid[ed] that a participating employee who 'intends to engage directly or indirectly' in a competitive business shall receive only fifty percent of his vested participating interest in the plan at the severance date." *Holsen*, 52 Wis. 2d at 283. The court stated that if § 103.465 applied and the amendment was in violation of it, the court did not need to even consider "the general 'rule of reason' test." *Holsen*, 52 Wis. 2d at 284.

¶15 In considering whether WIS. STAT. § 103.465 applied, the *Holsen* court found *Balistrieri* "strongly persuasive, if not completely controlling." *Holsen*, 52 Wis. 2d at 284-85. The *Holsen* court noted that the company's primary concern with regard to the amendment "was with limiting competition by former employees after termination of their employment." *Id.* at 285-86. The employer "was seeking to restrain the employee's activities," the court added, by the strength of the plan provision providing that the employer "could withhold fifty percent of the profit sharing and retirement benefits the employee would otherwise receive." *Id.* at 285. Drawing from *Balistrieri*, the court observed that

the "undoubted object and effect" of the challenged provision of the plan "is that of a powerful deterrent to the employee's exercise of the right to compete, particularly where, as here, the penalty involved is a substantial sum of money." *Holsen*, 52 Wis. 2d at 285 (quoting *Balistrieri*, 19 Wis. 2d at 270).

¶16    The *Holsen* court determined that the circuit court "was entirely correct in holding that the profit sharing and retirement plan of the employer was a contract to which [WIS. STAT. §] 103.465 … is applicable." *Holsen*, 52 Wis. 2d at 286-87.  Significant for the present case, the court pointedly and plainly stated a more general rule: "It follows that in Wisconsin a provision in an employer's profit sharing and retirement plan that calls for forfeiture of benefits by employees who engage in competitive enterprises is valid and enforceable only if it meets the requirements of sec. 103.465 …." *Holsen*, 52 Wis. 2d at 287.  That is the very scenario now before us.

¶17    With *Holsen* leading to the conclusion that WIS. STAT. § 103.465 applies to the restrictive covenant in this case, the Clinic and the Plan understandably try to sidestep *Holsen* and persuade us we should instead follow a later decision of our own, *Selmer Co. v. Rinn*, 2010 WI App 106, 328 Wis. 2d 263, 789 N.W.2d 621, which they believe provides them more fertile soil.  The Clinic and the Plan grab the reins of *Selmer* and hold on tight, hoping it can save the day and avoid the application of § 103.465 to the instant restrictive covenant. *Selmer* does not save the day.

¶18    In *Selmer*, employees were afforded an opportunity to purchase stock in Selmer's parent company at a reduced price, but the purchase agreement included provisions in which a participating employee agreed that both during and for one year after employment with the company, the employee would neither

solicit business from persons with whom the company does business nor disclose confidential information to anyone. 328 Wis. 2d 263, ¶4. Selmer's vice-president of sales and marketing signed the agreement and purchased stock at a reduced price but subsequently left Selmer, went to work for another company, and within weeks was soliciting former Selmer customers. *Id.*, ¶¶3-6. Selmer sued. *Id.*, ¶7.

¶19 In determining that WIS. STAT. § 103.465 did not apply, we cabined in the application of that statute to a set of restrictive agreements that is more limited than what the language of the statute actually provides for. *See Selmer*, 328 Wis. 2d 263, ¶¶21-22, 24. After loosely discussing some prior Wisconsin noncompete cases, we concluded that the statute did not apply because (1) "unlike typical restrictive covenants, upon which a prospective employee's position may depend, there were no consequences attached to [the former vice-president's] refusal to accept the agreement," so he was in no way pressured to accept it, and (2) "Selmer held no bargaining advantage" over the former vice-president. *Id.* ¶¶18-22. Expanding this to a broader rule, we then stated, "[w]e have established that where it appears the covenant cannot be separated from the employment relationship—either because the covenant is a condition of employment, or because the employer possesses an unfair bargaining advantage vis-à-vis the employee—the covenant receives the exacting scrutiny mandated by § 103.465." *Selmer*, 328 Wis. 2d 263, ¶23. Thus, we limited the application of § 103.465 to only restrictive covenants that are a condition of employment or where the employer had an unfair bargaining advantage.

¶20 In an unpublished 2017 decision, we noted *Selmer*'s apparent conflict with WIS. STAT. § 103.465 and prior supreme court precedent, including *Holsen*:

> We question now whether *Selmer* comports with the text of WIS. STAT. § 103.465. Further, we question whether *Selmer* conflicts with supreme court case law. *See Star Direct*[*, Inc. v. Dal Pra*, 2009 WI 76, ¶20,] 319 Wis. 2d 274, [767 N.W.2d 898] ("WISCONSIN STAT. § 103.465 governs the enforceability of restrictive covenants."); *Holsen v. Marshall & Ilsley Bank*, 52 Wis. 2d 281, 287, 190 N.W.2d 189 (1971) (concluding that "a provision in an employer's profit sharing and retirement plan that calls for forfeiture of benefits by employees who engage in competitive enterprises is valid and enforceable only if it meets the requirements of sec. 103.465"); *but see Reiman Assocs., Inc. v. R/A Advert., Inc.*, 102 Wis. 2d 305, 306-10, 306 N.W.2d 292 (Ct. App. 1981) (a case relied upon by *Selmer* in which the court declined to apply the statute to restrictive covenants made *between companies* as part of the sale of a business and when the covenants contained no restrictions on the right of individual employees to enter into competitive employment).

*Karsten v. Terra Eng'g & Constr. Corp.*, No. 2016AP2025, unpublished slip op., ¶16 (WI App Sept. 7, 2017). We could have easily added *Balistrieri*, as well as *Rosploch v. Alumatic Corp. of America*, 77 Wis. 2d 76, 79-80, 251 N.W.2d 838 (1977) ("[I]t is settled in this state that non-competition forfeiture clauses in pension or profit-sharing plans are contracts in restraint of trade, and as such, are subject to sec. 103.465."), to the list of supreme court precedent with which *Selmer* appears to conflict. Absent from all of these supreme court decisions is any indication that § 103.465 applies only to restrictive covenants that are a condition of the employee's employment or where the employer had an unfair bargaining advantage over the employee.

¶21 While it would be more favorable to the Clinic and the Plan's position if we had the power through our *Selmer* decision to modify our supreme court's earlier, precedential "reading [of] the statute itself" in *Balistrieri*, 19 Wis. 2d at 269, and particularly its statement in *Holsen* of the general rule "that in Wisconsin a provision in an employer's profit-sharing and retirement plan that

11

calls for forfeiture of benefits by employees who engage in competitive enterprises is valid and enforceable only if it meets the requirements of [WIS. STAT. §] 103.465," *Holsen*, 52 Wis. 2d at 287, that is not how things work. Our supreme court has made clear that it "is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case." *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). And, as we have relatedly held, "[w]hen a decision of this court and the supreme court are inconsistent, we are bound by the decision of the supreme court." *Cashin v. Cashin*, 2004 WI App 92, ¶44, 273 Wis. 2d 754, 681 N.W.2d 255 (citing *Ambrose v. Continental Ins. Co.*, 208 Wis. 2d 346, 354, 560 N.W.2d 309 (Ct. App. 1997)).

¶22 Because the restrictive covenant in this case falls squarely within the language of WIS. STAT. § 103.465, that statute applies, with *Holsen* nailing the coffin shut on that question. And, because the Clinic and the Plan fail to dispute Steffes' pointed position that the restrictive covenant is invalid and unenforceable under § 103.465, we conclude that it is invalid and unenforceable.[5] We reverse and remand for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded.

Recommended for publication in the official reports.

---

[5] In *Holsen v. Marshall & Ilsley Bank*, 52 Wis. 2d 281, 284, 190 N.W.2d 189 (1971), our supreme court expressed that if WIS. STAT. § 103.465 applied and the amendment was in violation of it, the court did not need to even consider "the general 'rule of reason' test." *See supra* ¶15. Similarly here, because § 103.465 applies and the Clinic and the Plan do not dispute that the restrictive covenant is invalid and unenforceable under the statute, we too need not consider the "rule of reason" test.

12